THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* NATHAN LEHMAN, and ABRAHAM LEHMAN, trading as N. LEHMAN & BROTHER.

*Art. 30, sec. 178, of the Code, relating to Sunday—Courts take Judicial notice of the Days of the Week on which particular Days of the Month fall—Law applicable to Common Carriers in regard to working on Sunday—Works of necessity—Legality of carrying Cattle on Sunday—Questions as to the liability of a Common Carrier for delay in the Transportation of cattle.*

Cattle belonging to the plaintiffs were received from the B. & O. R. R. Co. at Baltimore, by the P. W. & B. R. R. Co., to be transported over its road.  An action was brought by the plaintiffs against the P. W. & B. R. R. Co., upon the common law liability of the latter as a common carrier, to recover damages resulting from an alleged delay in the transportation of cattle, on the part of the defendant. The declaration alleged that the cattle were received by the defendant on the 28th of July, 1878, about the hour of four o'clock p. m., and were by it detained upon its road in Baltimore until about half past twelve o'clock a. m., of the morning of Monday, July 29th, 1878.  On demurrer, it was HELD:

1st. That although the declaration did not allege that the cattle were delivered to the defendant, on Sunday, it was the duty of the Court to notice the days of the week upon which particular days of the month fall; and hence the Court knew without other averment that the 28th of July, 1878, was Sunday.  And in the regular division of time, Sunday embraces all of the twenty-four hours next ensuing the midnight of Saturday.

2nd. That our Sunday law, as found in the Code, Art. 30, sec. 178, had no application to the case whatever.

3rd. That according to the principles of the common law, applicable to common carriers, the defendant, having accepted the stock to be transported over its road in the usual course of transit, it at once

Phil., Wilm. & Balto. R. R. Co. *vs.* Lehman & Brother.

became its duty to forward the same without unnecessary delay or detention.

4th. That its obligation was to carry, according to its public profession, and the conveniences at its command. And if injury were sustained by reason of any neglect of this duty, or other wrongful act in the carrying and delivery of the cattle, the fact of their having been received to be carried, or having been carried on Sunday, could afford no excuse to the defendant, or exoneration from liability.

5th. That the carrying forward of the cattle by the defendant on Sunday was not illegal; it was fairly and justly a work of necessity, and therefore excepted from the operation of the statute.

6th. That even upon the supposition that the plaintiffs were violating the law in having their cattle transported on a Sunday, the defendant could not avail itself of such infraction of the law by the plaintiffs, as a defence to an action for the consequences of a wrong or negligence of its own.

The cattle in question, after being received from the B. & O. R. R. Co., were carried by the defendant over its road to Philadelphia, and there delivered to the P. R. R. Co.; by which they were carried to Jersey City Stock Yards, their place of destination. They reached there too late for the market on Monday, and were not sold until Wednesday, which was the next market day. The defendant ran no regular freight trains on Sunday during the summer of 1878. But special trains were run on Sunday for the accommodation of the cattle trade, by an arrangement with the B. & O. R. R. Co.; and the usual course of dealing, as between the two companies, was for the B. & O. R. R. Co., to give notice by telegraph on Saturday, and again on Sunday morning of what cattle there would be for transportation over the defendant's road during the day of Sunday. HELD:

1st. That it was a question to be submitted to the jury, upon all the proof in the cause, to determine, whether according to the ordinary extent and usual course of the cattle trade on Sunday over the defendant's road from Baltimore, and the notice given the defendant's agents of the approach of trains for transportation on Sunday the 28th of July, the defendant had made reasonable provision, and exerted due care and diligence, to guard against delay in forwarding the cattle trains that might be received from the B. & O. R. R. on that day; or whether upon the receipt of such notice as was given, the

Phil., Wilm. & Balto. R. R. Co. *vs.* Lehman & Brother.

requisite means or equipment could have been provided, by reasonable exertion, to take forward the plaintiffs' cattle, without the delay that actually occurred.

2nd. That if the defendant provided reasonable equipment to meet the requirements of the Sunday's transportation in the usual course, upon the notice received, and the plaintiffs' cattle were carried forward and delivered with due diligence, and as much expedition as was practicable under the circumstances of the case, the defendant was not liable for the unavoidable delay; that is to say, a delay that could not have been avoided by the exercise of reasonable precaution and diligence.

3rd. But on the other hand, if the delay could have been avoided by the use of due diligence, and the making of proper effort to send forward the cattle with ready and convenient despatch, and injury resulted from a failure in that respect, the defendant was liable therefor.

4th. That the duty to deliver safely, and the duly to deliver *in due time*, were distinct obligations. The time of delivery was often a matter of distinct contract; but when, as in this case, there was no express contract, there was an implied obligation to deliver within a reasonable time; and that meant a time within which the carrier could deliver, using all reasonable exertion, and taking all reasonable precaution to avoid delay.

5th. That as it was sought to charge the defendant with the consequences of the delay, and the failure to use such degree of diligence in forwarding the cattle as would have secured their arrival at Jersey City in time for the cattle market of Monday, the 29th of July, it was material and necessary that it should be shown that the defendant had knowledge of or from the circumstances of the case and the course of the trade, it might have reasonably been inferred, that the cattle were intended for the market of that day.

6th. That it ought to have been submitted to the jury to find whether the defendant had made proper exertions, and used due and reasonable diligence, under all the circumstances of the case to avoid all unnecessary delay in the transportation of the cattle; or whether the cattle could have been carried forward with greater expedition and despatch than they were, by the use of reasonable precaution and diligence on the part of the defendant, under the circumstances in reference to which it was called upon to act.

7th. That if the defendant had been guilty of such negligence in the transportation of the stock as to render it liable, it could not

Phil., Wilm. & Balto. R. R. Co. *vs.* Lehman & Brother.

relieve itself by showing that a connecting road might have made up for its default.

8th. That the mere fact that the plaintiffs' agent had knowledge of what had been done, or of what was being done in regard to the cattle, and their destination, could in no manner affect the defendant's liability for failure or neglect in the discharge of its duty as carrier.

APPEAL from the Circuit Court for Howard County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the two following prayers:

1. If the jury find from the evidence that on the evening of the 28th of July, 1878, at a little before seven o'clock, thirteen car loads of cattle belonging to the plaintiffs were delivered by the Baltimore & Ohio Railroad, on the tracks of the defendant, at Canton Ferry, to be carried over the defendant's road to Philadelphia, and thence by the Pennsylvania Railroad to Jersey City, for the market of Monday, July 29, 1878, and that defendant was not in the habit of running freight trains over its road on Sunday, but was in the habit of running trains on Sunday, especially for the purpose of transporting cattle from Baltimore, to be delivered in Jersey City in time for the market of Monday; and that said cars were taken by the defendant's engine and employés from said Ferry to Canton Yard, and were there allowed to remain standing on defendant's tracks for about five hours; and shall further find, that the ordinary running time for stock trains from Baltimore to Jersey City, was from ten to twelve hours, and that in consequence of such delay at Canton Yard, said cattle did not reach Jersey City in time for the market of Monday, and that the plaintiffs thereby sustained loss, then the plaintiffs are entitled to recover.

2. If the jury find for the plaintiffs under their first prayer, they may embrace in their verdict any loss which they may find to have been sustained by the plaintiffs from loss in weight, or shrinkage in the cattle, from decline in the market value between the time when they could have been sold, if they had been transported with due dispatch and the time when they were actually sold, and any expenses incurred by the plaintiffs in feeding the cattle during such period for which they were held over by reason of any failure to transport them with due dispatch.

And the defendant offered the six prayers following:

1. That if the jury shall find that at the time of the injury complained of, the defendant advertised no freight trains for Sunday, and ran no regular freight trains on that day of the week, and that having regard to the day being Sunday, and the manner and time of the notification from the delivery by the Baltimore and Ohio Railroad Company; and the means of transportation in the defendant's power, when such notification was received, and the other circumstances of the case, the defendant used reasonable diligence in forwarding the plaintiffs' stock, then the plaintiffs are not entitled to recover, and their verdict must be for the defendant.

2. That if the jury shall find from the evidence, that the defendant gave such notice to the agents of the Pennsylvania Railroad Company, of the intended delivery to it of plaintiffs' stock, and delivered it to that company at such a time as to enable the Pennsylvania Railroad Company, by the use of reasonable diligence to deliver the same at Jersey City in time for Monday's market, then the plaintiffs are not entitled to recover, and their verdict must be for the defendant.

3. If the jury shall find that the intended delivery to defendant of plaintiffs' stock, was not notified to defendant at such a time and in such a manner, and that the

same was not delivered to defendant at such a time and in such a manner, as to enable defendant by the exercise of reasonable diligence to forward the same to the Pennsylvania Railroad Company in time for that Company by the exercise of reasonable diligence to deliver the same in Jersey City, in time for Monday's market, (and that the defendant did not receive the cattle for that purpose,) then the plaintiffs are not entitled to recover, and their verdict must be for the defendant.

4. If the jury shall find from the evidence, that at the time of the injury complained of, the defendant advertised no freight trains to run on Sunday, and ran no regular freight trains on that day of the week, and that stock from the west transported over the Baltimore and Ohio Railroad, was received by defendant on Sunday, for transportation over its road, in pursuance of an understanding and agreement between defendant and said Baltimore and Ohio Railroad, that such stock would be transported over its line on Sunday, upon the defendant's receiving reasonable and proper notice of the arrival of such stock for transportation over defendant's road ; and if the jury further find, that the stock mentioned in the declaration, did arrive in Baltimore City on Sunday, July 28, 1878, and was delivered by the Baltimore and Ohio Railroad Company to defendant, for transportation over its road, and that the notice to the defendant of the arrival of the stock was not, under all the facts and circumstances of the case, reasonable and proper to enable the defendant to transport the same over its road, so that the same could be delivered to the Pennsylvania Railroad Company for transportation, in time to reach the New York market the succeeding day, and that upon notice to the defendant of the arrival of said stock, the defendant used all reasonable and proper diligence for the transportation of the same over its road, and delivered the same with reasonable and proper diligence to the Pennsylvania Railroad Company

for transportation to their point of destination, then the plaintiffs are not entitled to recover.

5. That if the jury shall find from the evidence, that the plaintiffs' cattle were shipped from the west for Jersey City, to be transported over the line of defendant's road, and those of other companies, then the defendant is only liable for delays occurring on its own road, and if the jury shall find that defendant, on receiving the same, used, under all the circumstances of the case, reasonable diligence in forwarding it and delivering it to the next road, that of the Pennsylvania Railroad Company, then the plaintiffs are not entitled to recover, (unless the jury find for the plaintiffs under their first prayer.)

6. That if the jury shall find that the defendant ran no regular freight trains on Sunday, and advertised no freight trains on that day, and the stock in question mentioned in the declaration did arrive in Baltimore on Sunday, July 28, 1878, and was delivered by the Baltimore & Ohio Railroad Co., to defendant for transportation over its road, and that the notice to the defendant of the arrival of said stock was not, under all the facts and circumstances of the case, reasonable and proper to enable the defendant to transport the same over its road, so that the same could be delivered to the Pennsylvania R. R. Co., for transportation in time to reach the New York market the succeeding day, and that upon notice to the defendant of the arrival of said stock, the defendant used all reasonable and proper diligence for the transportation of the same over its road, and delivered the same with reasonable and proper diligence to the Pennsylvania R. R. Co., for transportation to their point of destination, and that said stock was in charge of Richard Harrold, the shipper on part of plaintiffs, and representing the plaintiffs, and that the defendant received said stock, and transported the same over its road, with the knowledge and consent and acquiescence of said Harrold, represent-

ing the plaintiffs; and further find, that the said Harrold knew the delay of said stock at Canton, and knew that said stock was intended for the New York market on Monday, then the plaintiffs are not entitled to recover.

The Court (HAYDEN, J.) granted the prayers of the plaintiffs, and rejected the first, second, fourth and sixth prayers of the defendant, and modified its third and fifth prayers, by adding the words contained in brackets, and granted them as thus modified.

The defendant excepted, and the verdict and judgment being rendered against it, appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*John J. Donaldson* and *Henry E. Wootton,* for the appellant.

The declaration charges the defendant with negligence in its calling as a common carrier on a Sunday. The defendant could be under no common law duty as common carrier, to carry on Sunday. *Art.* 30, *sec.* 178, *of the Code; Walsh vs. R. R. Co.*, 42 *Wis.*, 23; *Johnston vs. Commw.*, 22 *Pa. St.*, 102; *Powhatan St. Co. vs. Appomatox R. R.*, 24 *How.*, 255–7; *Merritt vs. Earle*, 29 *N. Y.*, 120.

It could only be bound by special contract to carry on that day; and the declaration is defective, in that no such special contract is alleged, or averments made from which the same could be inferred.

The declaration charges defendant as a common carrier, yet makes the gist of the cause of action to lie in a failure to deliver at a given time. In the absence of a special contract for delivery at a given time, common carriers are not bound to such a delivery. *Story on Bailments, sec.* 545*a;* 2 *Redfield on Railways,* 192, *and notes; Taylor vs. Gt. N. Railway,* 12 *Jur. N. S.,* 372; *Broadwell vs. Butler,* 6 *McL.,* 296; *Conger vs. Hudson R. R. R.,* 6

*Duer*, 375 ; *Wibert vs. N. Y. & E. R. R.*, 19 *Barb.*, 36, and 2 *Kern.*, 245 ; *Peet vs. Chicago & N. W. R. R.*, 20 *Wis.*, 594 ; *Hurst vs. Gt. W. Ry. Co.*, 19 *C. B. N. S.*, 310 ; *Hales vs. Lond. & N. W. Ry.*, 4 *B. & S.*, 66 ; *Taylor vs. Gt. N. Ry.*, 1 *L. R. C. P.*, 385 ; *Parsons vs. Hardy*, 14 *Wend.*, 215.

It is not even stated that the defendant knew the cattle were intended for Monday's market, for the failure to reach which damages are claimed. Such knowledge is necessary to the carriers' liability for failure to fulfil the purpose. *Horne vs. Midland Railway*, 8 *L. R. C. P.*, 131.

Art. 30, sec. 178, of the Code of Public General Laws forbids all labor, &c., ("*works of necessity and charity always excepted.*") Then, whether the Sunday carriage of plaintiffs' cattle was or was not in fact such a work of charity or necessity, the declaration is fatally defective, in that it does not bring the cause of action within the exception, either in terms or by averment of facts that would make it applicable. 1 *Chitty's Pl.*, 233 ; *Pate vs. Wright*, 30 *Ind.*, 476 ; *Jones vs. Andover*, 10 *Allen*, 21 ; *Kent vs. Holliday*, 17 *Md.*, 387 ; *Bode vs. State*, 7 *Gill*, 326.

The rule of diligence by which carriers are bound, is to deliver goods within a reasonable time, having regard to all the facts and circumstances of the case. *Story on Bailments, sec.* 545a ; 2 *Redfield on Railways*, 192, *and notes.*

And what is a reasonable time is a question of fact for the jury to decide, depending upon such circumstances. *Nettles vs. T. C. Rw.*, 7 *Rich.*, 190, 409 ; *Conger vs. Hudson R. R. R.*, 6 *Duer*, 375 ; *Mich., &c., R. R. Co. vs. McDonogh*, 21 *Mich.*, 165.

The plaintiffs' first prayer is, therefore, fatally defective. Not only does it decide, *as matter of law*, that, if the jury find the facts enumerated, the defendant did not use due diligence, but it entirely omits some of the

most material facts given in evidence, for example: that all the crews for the running of trains, are (with the exception of one sent off before notification of the coming of plaintiffs' stock) in Philadelphia; that the invariable course was for the Baltimore & Ohio Railroad Company to give notice of the cattle for next day's transportation; that that company had, on the 27th, notified defendant that it would have twenty to thirty cars, while, in fact, there came and were sent off on the 28th, before President street was notified of plaintiffs' thirteen cars, thirty-nine cars of stock; that the Baltimore & Ohio Railroad Company knew at 9.19 a. m. of the 28th, of the expected arrival of plaintiffs' cattle, and though defendant's operator was in his office till 11 a. m., that company never notified him, &c., &c.

The prayer, then, is obnoxious as presenting to the jury a number of facts segregated from the rest of the facts proved in the case, and some of those precisely the most important. *Riggin vs. Patapsco Ins. Co.*, 7 *H. & J.*, 291; *Beall's Lessee vs. Beall*, 7 *Gill*, 237; *Beall vs. Pearre*, 12 *Md.*, 550, 568; *Fulton vs. McCracken*, 18 *Md.*, 528; *Cook vs. Carr and Wife*, 20 *Md.*, 403; *Folk & Smith vs. Wilson*, 21 *Md.*, 538; *Connor & Gatch vs. The Mt. Vernon Co.*, 25 *Md.*, 55; *Thomas vs. Sternheimer*, 29 *Md.*, 268; *Winner vs. Penniman*, 35 *Md.*, 163; *Stansbury vs. Fogle*, 37 *Md.*, 387; *McWilliams vs. Hoban*, 42 *Md.*, 63.

This prayer also assumes a duty on the part of defendant to deliver the cattle so as to reach Jersey City at a given time. Such a duty can only arise on a special contract so to do. The prayer is misleading, if it intended to leave to the jury the question whether there was such a contract, as it is nowhere clearly put to them. If it meant to state a common law duty, it is bad.

Further, if founded on a supposed common law duty, the prayer is bad as not leaving it to the jury to find the facts that would make defendant a common carrier on

that day of the week, *e. g.:* that defendant held itself out as ready to carry for every one. *B. & O. R. R. vs. Green,* 25 *Md.,* 72; *Ingate vs. Christie,* 3 *C. & K.,* 61; *Johnson vs. Ry. Co.,* 4 *Exch.,* 367.

Nor is the prayer good, if grounded on a supposed special contract, for it leaves out the most material facts from which it might be attempted to infer such a contract. For such a purpose all the accompanying circumstances must be put to the jury. *B. & O. R. R. vs. Green,* 25 *Md.,* 72.

But there is no evidence from which such a special contract could be inferred.

But, even if founded on a supposed common law liability to deliver at a given time for a given purpose, such liability could only arise where there was a knowledge of that purpose, *Horne vs. Midland Railway,* 8 *L. R., C. P.,* 131; *Same Case,* 28 *L. T. N. S.,* 312; 7 *L. R. C. P.,* 264; and this is not clearly put to the jury in the plaintiffs' prayer.

The prayer, however, does not leave the *scienter* to the jury. If it was meant to do so, it is in such a form as to be utterly misleading to them. But granting that the *scienter* is clearly put to the jury, the mere knowledge would not raise a special contract to deliver at a given time, and would not vary defendant's responsibility as to the time of delivery; the gist of the matter being whether defendant exercised reasonable dispatch in the transportation over its line. *Fitzgerald vs. Midland Railway,* 34 *L. T. N. S.,* 771. The shipper is presumed to know the usages and general course of business prevailing between the successive carriers as to notice of arrival of goods and delivery for further carriage, and is bound by them. *Wood vs. Milwaukee & St. Paul R. R.,* 27 *Wis.,* 541; *U. S. Tel. Co. vs. Gildersleeve,* 29 *Md.,* 232.

With this prayer falls the Court's modification of the defendant's fifth prayer. Moreover, the carrier is only

bound to the extent of his profession. *Johnson vs. Railway Co.*, 4 *Exch.*, 367.

The defendant's first prayer clearly and distinctly leaves it to the jury to say whether or not, under such circumstances, the defendant used reasonable diligence, the only question arising in case of alleged delays by carriers.

And the same question is put to the jury in the defendant's third, fourth and fifth prayers.

As to the question of how far the defendant's liability is affected by negligence of a third party; if such negligence is material to the case, the defendant's first prayer is defective, as it entirely ignores it, though the record is full of evidence on that head. If such negligence were not material, the evidence would have been irrelevant and inadmissible. But no objection was taken to it at the trial below.

The defendant's second prayer presents the question of negligence on the part of the Pennsylvania Railroad Company, without which the loss would not have occurred.

There was evidence on which the jury could find that the Pennsylvania Railroad Company did not use reasonable diligence. Though notified between 9 and 10 p. m. of Sunday evening, it did not take the cattle away till forty-six minutes after delivery on its tracks, and took nine hours to run eighty-nine miles, when the defendant had run ninety-six in less than five hours.

If that company did not use reasonable diligence, and by doing so, could have got the cattle to Monday's market, which closed at 11.30 a. m. to 1 p. m., the defendant is discharged. Its only obligation is to use reasonable diligence to deliver to the next succeeding carrier in such time as to enable it, by the same diligence, to deliver in time at the destination. *B. & O. R. R. vs. Green*, 25 *Md.*, 72; *Harper's Case*, 29 *Md.*, 330; *Schumacher's Case*, 29 *Md.*, 168.

If this could have been done by a delivery to the Pennsylvania Railroad at 5.10 a. m., it is utterly immaterial

how much earlier defendant might have delivered them, There is nothing to show that that Company would have been more likely to get them on in time had they been received by it six hours earlier, and the delay on that line, and not on defendant's, is the *sine qua non* of the loss, if any.

There has been an endless discussion of the theory of remote and proximate cause in cases of negligence, but all the authorities are agreed, that, no matter how many concurring negligences there may be, no party, however negligent, is liable, unless his negligence be a *sine qua non* of the injury. *Trainor's Case*, 33 *Md.*, 542 ; *Bigelow's L. C. on Torts*, 610, and cases cited ; *Carter vs. Towne*, 103 *Mass.*, 507 ; *Ins. Co. vs. Tweed*, 7 *Wall.*, 44, 52 ; *Ann. & E. R. R. R. Co. vs. Gantt*, 39 *Md.*, 143 ; *U. S. Tel. Co. vs. Gildersleeve*, 29 *Md.*, 232.

The Baltimore and Ohio Railroad Company had notice of the expected arrival in Baltimore of plaintiffs' cattle— first at 9.19 a. m., and again at 2.37 p. m. of Sunday, July 28th, and that they were to go through to Jersey City. Yet, they did not notify President Street till 5.20 p. m. when the only crews the defendant had, had been sent off with the other cattle.

The Court modified the defendant's third prayer, which was specially directed to these facts, by inserting the words, "and that the defendant did not receive them for that purpose," (viz., for delivery at Jersey City in time for Monday's market,) and granted it with this modification. The effect of this is to throw on the defendant the duty of delivery at a given time at Jersey City, a point beyond its own line, and the further terminus of the Pennsylvania Railroad, without regard to the manner or time of the delivery to defendant, or any notification (as was usual,) beforehand, on a day when it advertises and runs no regular freight trains.

Moreover, it leaves the defendant directly responsible for losses by delays, &c., on another line, that of the Penn-

sylvania Railroad Company.   By the Maryland decisions the defendant cannot be liable beyond its own line, unless by special contract to that effect.   *B. & O. R. R. vs. Green*, 25 *Md.*, 72;  *P. W. & B. R. R. vs. Harper*, 29 *Md.*, 330; *B. & O. R. R. vs. Schumacher*, 29 *Md.*, 168;  *R. R. Co. vs. Pratt*, 22 *Wall.*, 123;  *Pratt vs. Rw. Co.*, 95 *U. S.*, 43.

Under this head also, the plaintiffs' first prayer is bad. It directs the jury to find for the plaintiffs if the cattle of the plaintiffs were delayed five hours at Canton, and *in consequence* did not reach market in time, but does not qualify this general statement by going on to say, " unless the jury shall find that such delay was in consequence of the default of the Baltimore and Ohio Railroad Company, (late delivery, failure to notify, &c., &c.")   If the defendant's delay was caused by such default of a third party, it is discharged.   *Conger vs. Hudson R. R. Railway*, 6 *Duer*, 275.   Especially if that third party was the carrier selected by plaintiffs to deliver to defendant. *Thorogood vs. Bryan*, 8 *C. B.*, 115.

The plaintiffs' agent, Richard Harrold, was with the cattle from the time they left Ohio until they reached Jersey City.   The contention of the plaintiffs seems founded in one aspect on the theory that the mere receipt by the defendant raised the duty to deliver at Jersey City, at a given time at all events, but the plaintiffs, by their representative, Harrold, were fully aware of the route and the running time, and the impossibility, if there was such, of the defendant's doing so, and the circumstances from which it arose, and assented to the receipt by the defendant under those circumstances.   The plaintiffs' first prayer is defective, in that while attempting to raise such a liability from the receipt, it leaves out the fact of Harrold's presence and knowledge of all the circumstances attending the receipt.   The carrier is only bound to the extent of his profession.   *Johnson vs. Railway Co.*, 4 *Exch.*, 367.   And on the theory of special contract, such omission is equally fatal to the prayer.

*William A. Fisher*, for the appellees.

The demurrer of the defendant was properly overruled. The time is so alleged in the *narr.*, that it need not be proved as laid—hence the demurrer does not raise the question.

The carriage of the cattle, under the circumstances, was not forbidden by the statute against labor on Sunday. The cattle had come to Baltimore from a long distance, during the heat of the dog days, closely confined in uncomfortable cars. There were no arrangements for their comfort, if they were detained in transit. The loss also to the owner must be great from delay. To carry them on with the utmost dispatch was, therefore, not merely " a work of charity," but also " of necessity." It will scarcely be contended in this day of enlightenment, when the helpless among the brute creation, as well as among human kind, are protected by statutes against cruelty, that " charity " is not a mantle broad enough to embrace within its folds any of God's creatures. The Congress of the United States has practically recognized the demands of " charity " in such cases, in regulating by law the manner of transporting cattle, and by rendering it unlawful to confine them in cars beyond the time fixed by the Act. *Com'rs vs. Knox*, 6 *Mass.*, 77 ; *Pearce vs. Atwood*, 13 *Mass.*, 351 ; *Com'rs vs. Sampson*, 97 *Mass.*, 407 ; *Flagg vs. Milbury*, 4 *Cush.*, 244.

But if it were conceded that the reception of the cattle by the defendant was an unlawful act, the appellees would not be precluded from recovery. They had placed their cattle in charge of the Baltimore & Ohio Railroad at Parkersburg, on Saturday, for transportation to Jersey City. The plaintiffs resided in Baltimore. If it was unlawful for the defendant to receive and transport the cattle on Sunday, the defendant was bound to decline to receive them from the Baltimore & Ohio Railroad Company. This would have left them in charge of the Bal-

timore & Ohio Railroad Company, which could at least have notified the appellees, and given to them the opportunity to remove the cattle from the cars, and to take care of them for further transportation, or for sale in the Baltimore market. The appellant having received them, even if it violated the law in doing so, nevertheless then became bound to perform at once all the duties of a common carrier, with reference to them. *P. W. & B. R. R. Co. vs. Phila. & Havre de Grace S. Co.*, 23 *Howard*, 217–18; *Powhatan Steamboat Co. vs. Appomattox R. R. Co.*, 24 *Howard*, 255–7; *Merritt vs. Earle*, opinion of WRIGHT, J., 29 *New York*, 120; *Jones vs. Norwich Co.*, 50 *Barb.*, 207; *Sanders vs. Staten Island R. R. Co.*, 13 *Abbott's Pr. Rep. N. S.*, 352–5; *Hall vs. Corcoran*, 107 *Mass.*, 251; *Carroll vs. Carroll*, 65 *Barb.*, 32, and 58 *N. Y.*, 133–7; *Sutton vs. Town of Wauwatosa*, 29 *Wisc.*, 21; *S. C., Bigelow, L. C. Torts*, 711.

The prayers granted at the instance of the appellees were free from objection. The measure of damages were properly stated. *B. & O. R. R. Co. vs. Brady*, 32 *Md.*, 335; *Block vs. Camden & Amboy R. R. Co.*, 45 *Barb.*, 40; *Smith vs. N. H. R. R. Co.*, 12 *Allen*, 531.

All the prayers on the part of the appellant except the second, are based upon the theory that if the Baltimore & Ohio Railroad Company failed to give to the appellant notice that the cattle were about to arrive, as long before their arrival as it ought to have been given, under the terms of the arrangements between the two companies, the appellant was absolved from liability to the appellees for the delay which resulted, because the appellant had no crew in readiness to take the cattle forward after they had been received. This theory cannot be maintained. The appellant assumed all the responsibilities of a common carrier when it received the cattle. *Brady's Case*, 32 *Md.*, 333.

The common carrier cannot excuse himself for delay by showing the lack of proper appliances for the transporta-

tion. *Tucker vs. Pacific R. R. Co.*, 50 *Mo.*, 385 ; *Ill. Cent. R. R. vs. Waters*, 41 *Ill.*, 73.

The common carrier may *refuse to receive* the goods, if offered at an improper time, but if he receive them, he must be prepared to perform his common law duties with regard to them. *Lane vs. Cotton*, 1 *Lord Raymond*, 652 , *Angell on Carriers, secs.* 125, 136*a, note a*.

ALVEY, J., delivered the opinion of the Court.

The first question that presents itself on this record is that raised by demurrer to the plaintiffs' declaration. The declaration alleges that the defendant is a common carrier for hire ; that on the 28th of July, 1878, about the hour of 4 o'clock p. m. the defendant *received* from the Baltimore & Ohio Railroad Company thirteen cars loaded with cattle, belonging to the plaintiffs, to be transported by the defendant, for a reward for that purpose paid or to be paid by the plaintiffs to the defendant, *with reasonable despatch* over the road of the defendant ; but the defendant did not, nor would, transport the same with reasonable despatch, but detained the same upon its road, in the City of Baltimore, from the time of the delivery to the defendant until about half past 12 o'clock a. m. of the morning of Monday, July 29th, 1878. By reason whereof the said cars, so laden with cattle, failed to reach Jersey City stock-yards, their point of destination, until the hour of 3 o'clock p. m. of the day last mentioned, and too late for the market of that day ; and the plaintiffs were compelled to retain the cattle until the market of Wednesday following, whereby a large shrinkage took place in the weight of the cattle, and deterioration of their condition, and the plaintiffs were put to great expense, in feeding the cattle during the period of delay, and loss of time thereby, and suffered loss by reason of the decline in the market value of the cattle, &c.

The Court below overruled the demurrer, and required the defendant to plead, and the question is, whether that ruling was correct.

As the defendant is charged with failure of duty, in the exercise of its calling as a common carrier for hire, the question raised by the demurrer is, whether on a Sunday there was, in the absence of a special contract, a common law duty imposed upon it, unrestricted and unaffected by statute, to carry or forward the cattle of the plaintiffs on that day, under the facts alleged in the declaration.

The declaration does not allege in terms that the cattle were delivered to the defendant for transportation on Sunday, but it alleges that the defendant received of the Baltimore & Ohio Railroad Company, a connecting road, the cattle on the 28th of July, 1878, to be transported with reasonable despatch over its road. It is the duty of the Court to notice the days of the week on which particular days of the month fall; and hence we know, without other averment, that the 28th of July, 1878, was Sunday. *Hoyle vs. Cornwallis,* 1 *Strange,* 387; *Kilgour vs. Miles,* 6 *G. & J.,* 268. And in the regular division of time, Sunday embraces all of the twenty-four hours next ensuing the midnight of Saturday.

Supposing the defendant to have professed and held itself out as a common carrier of live stock on Sunday as on other days of the week, whether it would have been bound to accept for carriage from the plaintiffs, or from a connecting road, stock offered on a Sunday, is a question not necessary to be decided. It is alleged that the plaintiffs' stock was offered on Sunday and actually received by the defendant to be transported over its road, with reasonable despatch. The action is founded upon the common law duty and liability of the defendant as a common carrier of live stock, and not upon any special contract either as between the plaintiffs and defendant, or as between the defendant and other connecting roads. It is

alleged that the defendant detained the stock on its road at Baltimore for a period of about seven or eight hours, after receiving it to be transported, whereby loss and injury accrued to the plaintiffs; and the question is, whether the defendant was justified in the detention by the fact that the stock was received upon the road on Sunday, about 4 o'clock p. m.

Most, if not all, of the States of the Union have what are familiarly known as Sunday laws; and while they may differ in their phraseology and the penalties imposed, they are substantially the same in their general scope and provision;—all looking to keeping the day sacred, and as one of rest from secular employments. Of these laws there has been great diversity of interpretation. Some Courts holding to them with great strictness, while others have construed them with considerable liberality,—and especially in cases where, by strict construction, impediments and embarrassments would be raised to the great carrying business ef the country. In this Court we have had no case analogous to the present; but, looking to what has been decided elsewhere, we have no doubt in · concluding that our Sunday law, as found in the Code, Art. 30, sec. 178, has no application to this case whatever. That statute forbids all persons to " work or to do any bodily labor on the Lord's day, commonly called Sunday;" and it provides that no person shall command or willingly suffer any of his servants to do any manner of work or labor on that day—*works of necessity and charity* always excepted;— and a small penalty is prescribed for a breach of the statute.

According to the principles of the common law, applicable to common carriers, the defendant having accepted the stock to be transported over its road, in the usual course of transit, it at once became its duty to forward the same without unnecessary delay or detention. Its obligation was to carry according to its public profession,

and the conveniences at its command. *Johnson vs. Midland R. Co.*, 4 *Exch.*, 367. And if injury be sustained, by reason of any neglect of this duty, or other wrongful act, in the carrying and delivery of the cattle, the fact of their having been received to be carried, or having been carried, on Sunday, can afford no excuse to the defendant, or exoneration from liability. The carrying forward of the cattle by the defendant on Sunday was not illegal; it was fairly and justly a work of necessity, and therefore excepted from the operation of the statute. And that being the case, there is no ground for the excuse relied on by the defendant. *Powhatan Steamboat Co. vs. Railroad Co.*, 24 *How.*, 247, 253; *Carroll vs. Staten Island R. Co.*, 58 *N. Y.*, 126; *Flagg vs. Millbury*, 4 *Cush.*, 243. And even upon the supposition that the plaintiffs were violating the law in having their cattle transported on a Sunday, it is well settled that the defendant could not avail itself of such infraction of the law by the plaintiffs, as a defence to an action for the consequences of a wrong or negligence of its own. *Phil. Wilm. & Balto. R. Co. vs. Steam Towboat Co.* 23 *How.*, 209; *Mohoney vs. Cook*, 26 *Penn. St.*, 342; *Sutton vs. Town of Wauwatosa*, 29 *Wis.*, 21; *Carroll vs. Staten Island R. Co.* 58 *N. Y.*, 126. The Court below was clearly right, therefore, in overruling the demurrer of the defendant to the declaration of the plaintiffs.

And having disposed of the question raised upon the demurrer to the declaration, we come now to consider the questions raised upon the facts of the case as proved upon the trial, under the plea of the general issue, not guilty.

The defendant owned and operated a line of railroad between Baltimore and Philadelphia, connecting at Canton, a mile and a quarter out of Baltimore, by ferry, with the Baltimore and Ohio Railroad, at Locust Point, and at Gray's Ferry, near Philadelphia, with the Pennsylvania Railroad. Its principal offices, and the

home of its rolling-stock, were and are still in Philadelphia, and the men for running its trains come from that point; and all orders for running trains issue from the same place. The defendant ran no regular freight trains on Sunday during the summer of 1878, and none were on the schedules or otherwise advertised for that day of the week. But special trains were run on Sunday for the accommodation of the cattle trade, by an arrangement with the Baltimore & Ohio Railroad Company, which had been in existence for some time previous. And, according to the testimony of witnesses, the usual and regular course of dealing, as between the two companies, was for the Baltimore & Ohio Railroad Company to give notice by telegraph, on Saturday, and again on Sunday morning, of what cattle there would be for transportation over the defendant's road, during the day of Sunday. Such notice was given, as stated by the witness, to the defendant's agents at Canton, that they might be ready to receive the cattle, and also to the defendant's agents at the President street depot, in the city, that they might hold over the necessary crews, and have them and the engines in readiness to take forward the trains: That, upon the arrival of the cattle trains at Canton from Locust Point, the defendant's agent at the President street depot, upon notice, would send down the crews and engines to take on the trains.

With this arrangement existing, the plaintiffs, on Saturday, the 27th of July, 1878, started from the Ohio river, at Parkersburg, West Virginia, thirteen car loads of cattle, over the Baltimore and Ohio Railroad, destined for Jersey City. The train was regularly due in Baltimore at 12 o'clock, m. of Sunday, the 28th of July. It did not, however, arrive on time. It reached Mount Clare, Baltimore, a little before 5 o'clock of that afternoon; and it left that station for Locust Point about 5.35 p. m.; and all the cars did not reach the tracks of the defend-

ant's road at Canton before 7 o'clock p. m. The distance from Baltimore to Gray's Ferry, by the defendant's road, is niney-six miles; and from the latter point to Jersey City, by the Pennsylvania Railroad, the distance is eighty-nine miles; and the time usually taken for the running of cattle trains from Baltimore to Jersey City is from ten to twelve hours.

It is shown in proof, by the testimony of witnesses, and the production of telegrams, that on Saturday, July 27th, at 12.45 p. m. the agents of the Baltimore & Ohio Railroad Company, at Mount Clare, notified, by telegraph, the agents of the defendant, at the home office in Philadelphia, at the President Street Depot, in Baltimore, and at Canton Station, that there would be, on the following day, from twenty to thirty cars of stock to go through to Philadelphia and New York; and that they would leave Mount Clare Station, at about 3½ o'clock p. m. On Sunday, the 28th, several despatches were sent from the office of the Baltimore & Ohio Railroad Co. to the agents of the defendant, announcing stock to be forwarded to Philadelphia and Jersey City, and all of which despatches were duly received by the agents of the defendant. The first of these appears to have been sent at 3.40 p. m., giving notice of fifteen cars, by numbers and consignments. The next to the defendant's agent at Canton, at 3.45 p. m., and to the agent at the President Street Depot, at 5.10 p. m. Another was sent at 4.55 p. m., to the agents at Philadelphia, Baltimore, and Canton, giving notice of twenty-four cars, by numbers and consignments; and another was sent to same agents at 5.20 p. m.; this last giving notice of thirteen cars, by numbers and consignments, and having special reference to the plaintiffs' stock. By the despatch that was sent to the defendant's agent at Canton at 3.45 p. m., and to the agent at the President Street Depot at 5.10 p. m., those agents were informed that fifteen cars of stock were still

out,—that they were expected by $3\frac{1}{2}$ o'clock p. m.; that they were to go to New York; and the agents were requested to "arrange to run them through without delay." The fifteen car loads here referred to included the thirteen belonging to the plaintiffs.

Upon the notification thus given, the defendant had in reserve at Baltimore but two engines and two sets of hands to take forward the cattle trains that arrived during the afternoon of Sunday, the 28th of July. Of the cars that arrived between 3 and 4 o'clock of that afternoon, two trains were made up, and were sent forward about 5 o'clock that evening; the engine for the first train leaving President Street Depot at 4.35 p. m., and that for the second at 4.51 p. m., the whole number of cars in the two trains being thirty-nine—nine more than were given notice of by the despatch of Saturday. The cars with the plaintiffs' cattle, having been received on the defendant's road about 7 o'clock p. m., were not taken forward until fifteen minutes after 12 o'clock that night. They were delivered on the tracks of the Pennsylvania Railroad, at Gray's Ferry, on the morning of July 29th, at about 5.10 a. m., and they were moved forward on the last mentioned road a few minutes before 6 o'clock of that morning. The cattle, however, did not arrive at Jersey City until about $2\frac{1}{2}$ or 3 o'clock p. m. of that day, and too late for that day's market. The next market day was Wednesday, when the cattle were sold.

In the absence of an express contract, the common law duty and liability of a common carrier for the safe carriage and due delivery of live animals are the same as that for the carriage and delivery of other property; the liability in all cases being qualified by the nature and inherent tendencies of the thing carried. In undertaking the carriage of live stock, therefore, the carrier assumes the obligation to deliver safely, and within a reasonable

time, having due respect to the circumstances of the case. *Balto. & Ohio R. R. Co. vs. Brady*, 32 *Md.*, 333; *Smith vs. Railway Co.*, 12 *Allen*, 531; *Mynard vs. Syracuse R. Co.*, 71 *N. Y.*, 180. The same principle, though not necessarily involved, nor expressly decided, was recognized in the case of *Bankard vs. B. & Oh. R. Co.* 34 *Md.*, 197.

In this case, there can be, of course, no liability on the part of the defendant for any delay in the transportation of the cattle before they reached the tracks of, and were received by, the defendant; nor is the defendant liable for any delay in carrying forward the cattle after they were delivered on the tracks of the Pennsylvania Railroad Company, at Gray's Ferry. In the case of an intermediate carrier, as the defendant in this case, that accepts property for carriage, directed to a place beyond the terminus of its route, the law, in the absence of a special contract, or of special circumstances, implies an undertaking on the part of the carrier, to deliver the property carried, at the end of its route, to the next succeeding carrier; and for any failure in this duty, within a reasonable time, the carrier is liable to all the consequences of such failure. *Railroad Co. vs. Manf. Co.*, 16 *Wall.*, 318; *Railroad Co. vs. Pratt*, 22 *Wall.*, 123; *Pratt vs. Railway Co.*, 95 *U. S.*, 43; *Rawson vs. Holland*, 59 *N. Y.*, 611; *Phil. Wilm. & Balt. R. Co. vs. Harper*, 29 *Md.*, 330. The principal question here is, whether, according to the ordinary extent and usual course of the cattle trade on Sunday, over the defendant's road from Baltimore, and the notice given the defendant's agents of the approach of trains for transportation on Sunday, the 28th of July, the defendant had made reasonable provision, and exerted due care and diligence, to guard against delay in forwarding the cattle trains that might be received from the Baltimore & Ohio Railroad on that day; or whether, upon the receipt of such notice as was given, the requisite means or equipment could have been provided, by reasonable exertion, to

take forward the plaintiffs' cattle without the delay that actually occurred? And this is a question that should have been submitted to the jury for their determination, upon all the proof in the cause. If the defendant provided reasonable equipment to meet the requirement of the Sunday's transportation in the usual course, upon the notice received, and the plaintiffs' cattle were carried forward and delivered with due diligence and as much expedition as it was practicable, under the circumstances of the case, the defendant is not liable for the consequences of the unavoidable delay; that is to say, a delay that could not have been avoided by the exercise of reasonable precaution and diligence. But, on the other hand, if the delay could have been avoided, by the use of due diligence, and the making of proper effort to send forward the cattle with ready and convenient despatch, and injury resulted from a failure in that respect, the defendant is liable therefor. The duty to deliver safely and the duty to deliver *in due time,* are distinct obligations. The time of delivery is often a matter of express contract; but when, as in this case, there is no express contract, there is an implied obligation to deliver within a reasonable time, and that means the time within which the carrier can deliver, using all reasonable exertion, and taking all reasonable precaution, to avoid delay. That proposition would appear to be well settled upon undoubted authority. *Parsons vs. Hardy,* 14 *Wend.,* 215 ; *Taylor vs. G. N. Railw. Co., L. R.,* 1 *C. P.,* 385 ; *Sto. on Bailm., sec.* 545 *a ;* 1 *Pars. on Contr.,* (*4th Ed.,*) 659, and cases there cited. And in determining the question of the liability of the defendant on the facts of this case, that principle is important to be observed.

With respect to the question of damages and the extent thereof to which the plaintiffs may be entitled to recover, it is only necessary to say a few words, in view of the authorities upon the subject. As it is sought to charge the

defendant with the consequences of the delay, and the failure to use such degree of diligence in forwarding the cattle as would have secured their arrival at Jersey City in time for the cattle market of Monday, the 29th of July, it is material and necessary that it should be shown that the defendant had knowledge, or from the circumstances of the case and the course of the trade, it might have reasonably inferred, that the cattle were intended for the market of that day. The defendant, at least, should have had an opportunity of contemplating the *special* consequences of a breach of duty, or of making some special provision against incurring the liability therefor; and without notice this could not well have been done. *Hadley vs. Baxendale*, 9 *Exch.*, 341; *Great West. Ry. Co. vs. Redmayne, L. R.*, 1 *C. P.*, 329; *Horne vs. Midland Ry. Co., L. R.*, 8 *C. P.*, 131; *Grindle vs. Eastern Exp. Co.*, 67 *Me.*, 317.

With these principles in view we may now dispose of the several prayers ruled upon by the Court below, and which were the subjects of exception by the defendant.

The first prayer on the part of the plaintiffs, and which was granted, we think erroneous. By that prayer it was not submitted to the jury to find whether the defendant had made proper exertions, and used due and reasonable diligence, under all the circumstances of the case, to avoid unnecessary delay in the transportation of the cattle; or whether the cattle could have been carried forward with greater expedition and despatch than they were, by the use of reasonable precaution and diligence on the part of the defendant, under the circumstances in reference to which it was called upon to act. The prayer assumes it as a principle that, the defendant having accepted the property for carriage for a particular market, the delay of five hours more than the the usual time could not be excused, and that the defendant was bound to carry and deliver *within a certain time*, without reference to causes

and contingencies referred to in the evidence, and whether they were reasonably within the defendant's control or not. This, as we have shown, is not the law, in the absence of an express contract requiring such delivery. That prayer, therefore, should have been refused.

The plaintiffs' second prayer, which was also granted, has not been seriously questioned in this Court. It appears to be substantially correct, when construed in reference to the facts required to be found by the first prayer, and other undisputed facts in the case; and we shall therefore say nothing more in regard to it.

The first prayer on the part of the defendant, which was rejected, we think should have been granted. It was not as full and as explicit, perhaps, as it might have been made; but it would seem to embody all the elements of fact to make it a good defence to the action, if found by the jury.

The defendant's second prayer was properly refused. If the defendant had been guilty of such negligence in the transportation of the stock as to render it liable, it could not relieve itself by showing that a connecting road might have made up for its default. The duties and liabilities of the two roads were entirely distinct; and no recovery could be had against either, unless the injury complained of was caused by or resulted from the default of the particular party sued. The Pennsylvania Railroad Company might well say, that if the cattle train had been delivered on its tracks at Gray's Ferry four or five honrs sooner than it was, it would have reached Jersey City in ample time for the market of Monday, the 29th of July. The defendant's third prayer was also properly refused, because it made the defendant's liability, to some extent, to depend upon the exercise or non-exercise of such reasonable diligence as might have been within the power of the Pennsylvania Railroad Company. But we think the fourth and fifth prayers of the defendant, as

offered, were unobjectionable, and should have been granted. The sixth prayer was properly refused. The mere fact that the plaintiffs' agent had knowledge of what had been done, or of what was being done, in regard to the cattle, and their destination, could in no manner affect the defendant's liability for failure or neglect in the discharge of its duty as carrier.

It follows that the judgment below must be reversed, and a new trial ordered.

<div align="right">

*Judgment reversed, and*
*new trial awarded.*