BLACKSTOCK *v.* THE NEW YORK AND ERIE RAILROAD COMPANY.

A railroad corporation is responsible for damages resulting from a delay to transport freight in the usual time, which was caused by a great number of its servants suddenly and wrongfully refusing to work.

Of 168 engineers in the employment of a railroad company, 140 suddenly and by concert abandoned their engines for the purpose of compelling the company to rescind a reasonable regulation: *Held*, that although the superior officers were without the slightest fault, the corporation was responsible for the damages caused by a delay in transporting property which resulted from the strike.

APPEAL from the Superior Court of the city of New York. The action was brought against the defendant as a common carrier, for a delay in the carriage of a large quantity of potatoes in barrels and sacks, from Hornellsville in Steuben county, to the city of New York. They were received by the defendant on different days in June, 1854, and would have been delivered, according to the usual course of business, within five days, but they were detained about seventeen days, and when delivered were found to have become unmerchantable, and were nearly worthless on account of the delay in their transportation.

The delay was occasioned by the refusal of a large number of the defendant's engineers (140 out of a total number of 168) to work, under the following circumstances: On the 15th of May, 1854, the defendant adopted a new rule for the government of its engineers, to the effect that they were respectively to be accountable for running the train off the track at a switch, at any station where the train should stop. This rule was a substitute for a former one upon the same general subject, which had been found impracticable, and which had not therefore been enforced. The referee before whom the case was tried, found, in substance, that the new rule was a reasonable and proper one, which ought to have been submitted to by the

Blackstook *v.* The New York and Erie Railroad Company.

engineers. They did perform their duties under it for a time, but when it was ascertained that it would be steadily enforced, a combination, which is called in the case "a strike," was entered into and they gave notice that they should stop work unless the regulation should be rescinded in two days. That not being done, they refused to perform any further services, and persisted for fourteen days; at the expiration of which period they returned to their duties, and have since served under the new rule. The defendant used diligent efforts to procure other engineers to run its trains, but was not successful. The delay in transporting the potatoes was owing to the circumstances mentioned. The potatoes were owned by, and the cause of action (if any) accrued in favor of, one Rosbotham, who had assigned it to the plaintiff. The referee found that the conduct of the defendant's engineers did not furnish a defence, and reported in favor of the plaintiff for $800 damages, for which judgment was entered and affirmed at a general term. The case was submitted on printed briefs.

*D. B. Eaton*, for the appellant.

*Culver, Parker & Arthur*, for the respondent.

DENIO, J. The position that the defendants are not responsible, because the misconduct of their servants was willful and not negligent, cannot be sustained. The action is not brought on account of any injury done to the property by the engineers, but for an alleged non-performance of a duty which the defendants owed to the owner of the property. If their inability to perform was occasioned by the default of persons for whose conduct they are responsible, they must answer for the consequences without regard to the motives of those persons. In the common case of a contract for services, as for building a house, which the builder had been unable to perform because his workmen had abandoned his service, proof that their conduct was willful and every way unjustifiable would not give the party injured an action against them, nor would it excuse the

party who had made the contract. A similar point was taken in *Weed* v. *The Panama Railroad Company* (17 *N. Y.*, 362), where the misconduct of the defendants' servants in detaining a train of cars was active, but it was held not to furnish any answer to the action for the detention. The cases in which it has been held that if a servant, while generally engaged in his master's business, willfully commit a trespass, as by intentionally driving his master's carriage against the carriage of another person, the master is not liable, have no application to the present case.

It has been repeatedly held, and may be taken as settled law, that a carrier is not under the same absolute obligation to carry the goods intrusted to him in the usual time, which he is to deliver them ultimately at their destination. (*Conger* v. *The Hudson River R. R. Co.*, 6 *Duer*, 375; *Wibert* v. *The N. Y. & Erie R. R. Co.*, 2 *Kern.*, 245.) But in the absence of a legal excuse, he is answerable for any delay to forward them in the time which is ordinarily required for transportation, by the kind of conveyance which he uses. In the case referred to from Kernan's Reports, we held that where a railroad was fully equipped with engines and freight carriages, but more property was offered at a particular point than could be sent forward at once, the delay was justifiable, provided no unfair preference was given to other freight over that of the plaintiff. In the present case, the excuse arises wholly out of the misconduct of the defendants' servants who wrongfully refused to perform their duty, and thus deprived the defendants, for the time, of the ability to send forward the property; and the question is whether the defendants' case can be separated from that of the engineers, so that it can be held that though the latter were culpable, their employers, the defendants, were without fault, and consequently not responsible to the plaintiff. This involves a consideration of the legal effect of the relations which exist between these several parties. In the first place, there was no privity between the plaintiff and the engineers. The latter owed no duty to the former which the law can recognize. If they had committed a positive tort

or trespass upon the property, the owner might pass by the employers and hold them responsible, but for a nonfeasance or simple neglect of duty, they were only answerable to their employees. The maxim in such cases is *respondeat superior.* (*Story on Agency,* § 309; *Denny* v. *The Manhattan Co.,* 2 *Denio,* 115; *S. C. in error,* 5 *id.,* 639.) Although the nature of the contract between the railroad company and the engineers is not disclosed in the finding, it is quite improbable that it was such that the latter might throw up their employment upon two days' notice without any legal cause. If it were of that character, the liability, moral as well as legal, would rest upon the defendants, for in that case they would have neglected a most ordinary precaution for securing the continuous running of their trains. Assuming then that abandoning their work was a breach of contract on the part of the engineers, they by that act became responsible to the defendants for all its direct consequences. The case therefore is one in which the actual delinquents, through whose fault the injury was sustained, were responsible to the defendants but were not responsible to the plaintiff. This shows the equity of the rule, which holds the master or employer answerable in such cases. Its policy is not less apparent. Those who intrust their goods to carriers have no means of ascertaining the character or disposition of their subordinate agents or servants; they have no agency in their selection, and no control over their actions. In the case of a loss by the misconduct of a servant, the party injured has no means of ascertaining whether due caution was exercised by the master in employing him, or prudence in retaining him; and in the case of a controversy between the master and the servant as to which was the real delinquent, the owner of the property must generally be without the necessary evidence to charge the liability upon the master. The rule which the law has adopted, by which the master is held responsible for the acts of his servants, is the one best calculated to secure the observance of good faith on the part of persons intrusted with the property of others. The motive of self-interest is the only one adequate to secure

the highest degree of caution and vigilance by the master. The principle itself is extremely well settled. (*Story on Agency*, § 452; 2 *Kent Com.*, 259; *Harlow* v. *Humiston*, 6 *Cow.*, 189; *Ellis* v. *Turner*, 8 *Term R.*, 531.)

I cannot see anything in the circumstances of the defendants to take the case out of the rule. Being a corporation, all their business must necessarily be conducted by agents, and if they are not liable for their acts and. omissions, parties dealing with them have no remedy at all. A railroad corporation is no doubt peculiarly exposed to loss from the misconduct of its engineers; and in the present case it does not appear that the slightest blame can attach to any of the superior officers of the company. Still the property intrusted to the defendants to carry has been lost from a failure on their part to perform the duty with which they were charged, and the only answer which they are able to make to the demand for compensation, is that the failure was caused by the misconduct of their servants. This we have seen cannot avail them as a defence. I have looked into the exceptions to the rulings of the judge upon the trial, and think those rulings were in both the instances where exceptions were taken entirely correct.

The judgment of the Supreme Court must be affirmed.

SELDEN, J., was absent; all the other judges concurring.

Judgment affirmed