————o————

AQUILLA D. READ, Respondent, *vs.* THE ST. LOUIS, KANSAS CITY AND NORTHERN. RAILROAD COMPANY, Appellant.

1. *Carriers—Bill of lading, stipulation against freezing—How far exempts carrier from liability.*—Notwithstanding that by the bill of lading it was stipulated that a cargo of potatoes was to be carried by a railroad at the owner's risk of freezing, yet the road would be liable for all such damage caused by the failure to forward the potatoes with reasonable dispatch.

2. *Practice, civil—Instructions.*—Instructions not based on evidence, are properly refused.

3. *Common carrier cannot by contract protect himself against his own negligence.*—The doctrine is now well established in this State that a common carrier can, by special contract, limit his common law liability; but he cannot exempt himself from the consequences of his negligence.

4. *Common carrier—Risks excepted in bill of lading—Exception must be sole cause of damage, etc.*—Where the loss of or injury to a cargo, shipped on a railroad, occurs from any of the causes excepted in a bill of lading, in order that the company may be relieved from liability, it must appear that the exception named is the proximate and sole cause of the damage. If the negligence of the carrier mingles with it as an active and co-operative cause, the carrier will be responsible.

5. *Common carrier—Action against for loss of goods—Plaintiff in first instance need only prove loss—Exemption under contract, how pleaded and proved—Negligence of carrier, how made out.*—In suit against a common carrier for damage to a cargo of goods, plaintiff in the first instance is only required to prove the delivery and loss, and if defendant pleads an exemption under his contract, the burden is upon him to prove that the loss was occasioned by the cause excepted; but he is not required to go further and prove affirmatively that he was guilty of no negligence. Proof of that fact will rest upon the plaintiff. And such proof is made out by showing that the injury might have been avoided by the exercise of reasonable skill and attention on the part of the carrier.

6. *Railroad strike no excuse for delay in delivering freight.*—The sudden and wrongful refusal of its employees to work will not excuse a railroad company for failure to transport freight in the usual time.

*Appeal from Buchanan Circuit Court.*

*W. H. Sherman*, for appellant.

. I. Where it is shown that a loss by a common carrier was occasioned by a cause from which he is by law or special contract exempted from liability, the burden is cast upon the shipper to establish the negligence of the carrier. In other words, the shipper then holds the affirmative in establishing the liability of the carrier for negligence. (N. J. St. Nav. Co. vs. Merchants' Bk., 6 How., 382; Railroad Co. vs. Reeves, 10 Wall., 176; Clark vs. Barnwell, 12 How., 280; Muddle vs. Stride, 9 Carr. & P., 385; Western Tr. Co. vs. Downer, 11 Wall., 129, S. C. 10 Am., L. Reg. (n. s.) 360; Western Tr. Co. vs. Newhall, 24 Ill., 469; Farnham vs. C. & A. R. R. Co., 55 Pa. St., 58; Colton vs. C. & P. R. R. Co., 67 Pa. St., 213.)

II. What is reasonable time, and what is delay, must always be determined by the circumstances under which the carrier acts. (Parsons vs. Hardy, 14 Wend., 217; Harmony vs. Bingham, 12 N. Y., 99; Wibert vs. N. Y. & E. R. R., 19 Barb., 36; S. C., 12 N. Y., 245; Conger vs. H. R. R. Co., 6 Duer, 375; Swetland vs. B. & A. R. R. Co., 102 Mass., 276.)

Defendant is not liable for delay caused by the acts of third parties who prevent the operation of its railroad, notwithstanding the exercise of reasonable care and prudence to avoid delay. (Conger vs. H. R. R. Co., 6 Duer., 375; see also, Blackstock vs. N. Y. & Erie R. R. Co., 1 Bosw., N. Y., 78; S. C., 20 N. Y., 48.)

In the above cases the decisions hold the carrier responsible for injuries resulting from a strike of engineers; but they were based upon the fact that it was the sudden and faulty refusal of the large body of defendant's engineers, then their servants, to do their duty that caused the delay in question.

But in this case, as shown by the evidence, the rebellious engineers left the defendant's service when the strike began, and defendant made every effort in its power to suppress their riotous demonstrations and to employ other servants.

To render defendant liable for damages by the freezing, its negligence must have been an active and co-operative cause.

If the delay was excusable, as shown to be by the facts, and if the cars were suitable, defendant did its duty as a common carrier. (Levering vs. Un. Tel. & Ins. Co., 42 Mo., 95.)

III. The freezing in this case was not a natural result of the delay. It was the remote and not the immediate consequence. And hence defendant cannot be held liable. (See Denny vs. N. Y. Cent. R. R. Co., 13 Gray, 481; Hazard vs. N. E. Mar. Ins. Co., 1 Sumn., 229; Delano v. Bedf. Ins. Co., 10 Mass., 354; Morrison vs. Davis, 20 Penn. St., 171; Hoadley vs. N. Trans. Co., 115 Mass., 304; Ballentine vs. N. Mo. R. R. Co., 40 Mo., 505; Clark vs. Pac. R. R., 39 Mo., 190.)

*Doniphan & Reed* for, respondent.

The delay was caused by the fact that defendant's employees suddenly and wrongfully refused to work, and defendant cannot avail itself of this fact, even though it used effort and diligence to obtain other employees. (1 Bosw., 77; 20 N. Y., 48.)

II. The freezing is claimed by appellant to be an act of God; but the law is, that even in that case, if the negligence of the carrier mingles with it as an active and co-operative cause, he is still responsible.

In the case at bar, the loss was owing not merely to the act of God, but to the strike which caused the delay; and the neglect and inattention of the servants to duty were those of the master, and so the negligence of the company contributed to produce the loss.

III. Whatever stipulations may be contained in a bill of lading, the carrier cannot by contract exonerate himself from the consequences of his own negligence.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff alleged in his petition that on the 22d day of March, 1873, he delivered to defendant at St. Joseph, Mo., one thousand bushels of potatoes, to be conveyed to his consignees at St. Louis, with reasonable speed and dispatch; that defendant, for a compensation paid by plaintiff, undertook

to deliver the same on the next day in good condition. There was an averment that, disregarding its duty and agreement, defendant negligently failed to carry, and deliver the potatoes at St. Louis, with speed and diligence, but negligently stopped and delayed the potatoes by the way for a period of ten days, so that they were frozen, rotted, and rendered wholly worthless ; and that the damage to the potatoes was entirely in consequence of defendants' negligently failing to deliver them.

The answer denied these allegations, and for a further defense it was stated that when the potatoes were delivered to defendant, there was a stipulation entered into between the parties by which it was agreed that the potatoes were to be carried at the owners' risk of freezing. It is further alleged that the potatoes shipped on the 22d of March arrived at their destination on the 31st day of the same month, and that from the time they were shipped, and continuously thereafter, until about the first day of April, the defendant was prevented from running or carrying freight or freight cars over the line of its railroad by unavoidable and unforseen misfortune ; that defendant endeavored by diligence and care to deliver the freight at its destination, but that during the time mentioned several persons and lawless bands of men assaulted defendants' employees, and that by such assaults and threats of personal violence, drove the employees away, so that defendant could not run or operate its road, and that lawless bands of men tore up the track and burned bridges, rendering it impossible to transport freight on the cars without many delays.

A replication was filed to this answer which alleged among other things, that the lawless persons and bands of men were dissatisfied and disaffected employees of defendant engaged in a "strike," and that all difficulties arising from this cause were over before the potatoes were shipped.

The trial was before the court with a jury, and there was a verdict and judgment for the plaintiff.

The evidence shows that at the time the potatoes were delivered to the defendant, it gave a receipt for them in the nature of a bill of lading, which had written upon its face the words "owner's risk, freezing." The evidence further showed that the difficulty in running the trains was occasioned by what was called a "strike" among the defendant's engineers, originating in consequence of the employment of an engineer that did not belong to their brotherhood, and that their places were supplied as rapidly as defendant could get others to take them.

For the plaintiff, the court instructed the jury:

1. That if they believed from the evidence that the potatoes were shipped to be delivered in St. Louis, within a reasonable time, and that they were damaged by reason of the carelessness, delay and negligence of the defendant in delivering them to the consignees, then the jury should find for the plaintiff.

2. That if the agent at St. Joseph induced the plaintiff to ship the potatoes by representing that the road was clear, and that they would be delivered in St. Louis within twenty-four hours, or thereabouts, and relying upon such representations, plaintiff paid the freight, and a failure to deliver within a reasonable time, resulted in a loss to plaintiff by freezing, then he was entitled to recover for such loss; and

3. That it devolved on the defendant to show, notwithstanding the exception exempting it from loss by freezing, that the loss did not occur through any fault, want of care, or negligence on its part, or the part of its agents or employees.

The defendant asked the court to give ten instructions. The court gave the third, eighth, and tenth, and the first and fourth in a modified form, and refused the others.

The first instruction declared, that it was admitted that on or about the 22d of March, 1873, the plaintiff shipped a quantity of potatoes to be carried by defendant to St. Louis, at the owner's risk of freezing; and if the jury believed from the evidence that defendant's freight trains and cars in which the potatoes were shipped were delayed on the railroad by

obstructions thereon placed by persons other than servants or employees of the defendant, or by other riotous conduct of such persons along the line of the railway, and that defendant, with great care and diligence and regard for the property of plaintiff and others, strove to carry (among others) the cars containing plaintiff's potatoes, to St. Louis, and to avoid delay; and that notwithstanding defendant's care and diligence, plaintiff's potatoes were delayed by such obstructions and riotous conduct, and that during such delay they were injured by freezing, then plaintiff cannot recover for such injury.

The third instruction states the proposition that it is admitted in the case, that when the plaintiff's potatoes were shipped by defendant for St. Louis, plaintiff assumed all risk of loss in consequence of freezing; and if the jury believe from the evidence that the potatoes were frozen while being carried by defendant to St. Louis, and that the damage to them by freezing was not produced or aided directly by the negligence or want of reasonable care on the part of defendant's servants or agents, then they will find for defendant.

The fourth instruction told the jury that under the contract read in evidence defendant was only obliged to transport the potatoes with reasonable speed and dispatch; and if they believed that, while the potatoes were being carried to St. Louis by the defendant with such reasonable speed and dispatch, they were injured by freezing, then plaintiff could not recover for such injury.

The eighth instruction declared that, if it was found from the evidence that injury to plaintiff's potatoes by freezing must have happened even though the defendant carried them to St. Louis in a reasonable time, the verdict should be for the defendant.

The tenth instruction merely related to the measure of damages.

The second instruction asserted that the defendant was not liable for damages for freezing the potatoes, even though it might be found that they would not have been injured had

they been carried and delivered with the usual or ordinary speed. This instruction was properly refused. Notwithstanding the exemption of the risk against freezing, it was the duty of the carrier to forward the potatoes with reasonable dispatch, and for all losses occasioned by its negligence or carelessness in omitting to perform the work imposed upon it by its employment, it will be held responsible.

The seventh and ninth instructions, refused, had reference to the delay caused by the interruption of the trains by those who were obstructing the travel on the road, the former declaring that the company was not liable if the delay was caused by the acts of third parties, or was produced by causes which defendant could not control, and the latter announcing the proposition that there was no liability, if the obstructions, assaults and hindrances, were produced by persons not at the time in the service of the company, although they or some of them might have been in its employment at the commencement of the difficulties. These instructions were rightly refused.

The court had already sufficiently instructed the jury upon this subject, and the propositions contained were not justified by the evidence.

The fifth declaration refused for the defendant, is the converse of the one given for the plaintiff on the same question, and is as follows:

"The plaintiff having assumed in his contract with defendant the risk of loss resulting from the freezing of his potatoes, shipped on defendant's railroad, the defendant is not liable for any such loss, unless the jury believe from the evidence that such loss was occasioned through negligence or want of due care on the part of defendant, or its agents or servants, and the burden of proving such negligence or want of due care lies on the plaintiff."

The doctrine is now well established in this State, that a common carrier by a special contract can limit his common law liability, but he cannot exempt himself from the consequences of his negligence. (Levering vs. W. T. & I. Co., 42

Mo., 88 ; Wolf vs. The Am. Ex. Co., 43 Mo., 421; Ketchum vs. The Am. Mer. U. E. Co., 52 Mo., 390.)

In the first place, all that it is necessary for the plaintiff to do to make out his case is, to show the delivery of the goods to the carrier, and the burden of accounting for them is cast upon him. If the carrier would exonerate himself from responsibility, he must either deliver the goods or prove that the loss occurred by the act of God, the public enemy, or by reason of some special exemption contained in a contract. Where the loss occurs from any of the causes excepted in the undertaking, the exception must be the proximate cause of the loss, and the sole cause. And where the loss is attributable to such cause, still if the negligence of the carrier mingles with it as an active and co-operative cause, he is responsible. When the loss of the goods is established, the burden of proof devolves upon the carrier to show that it was occasioned by some act which is recognized as an exemption. This shown, it is *prima facie* an exoneration, and he is not required to go further and prove affirmatively that he was guilty of no negligence. The proof of such negligence, if negligence is asserted to exist, rests on the other party. It is competent for the owner to show that the injury might have been avoided by the exercise of reasonable skill and attention on the part of the carrier. For then, without regard to his exemption from liability, it will be considered as a loss happening on account of his negligence and inattention and the want of that care and diligence which the law imposes upon him. But the burden devolves upon him to counteract the case made by the carrier, when it is shown that the loss occurred on account of some act excepted in the contract or undertaking. (Wolf vs. The Am. Ex. Co., 43 Mo., 421 ; Railroad Co. vs. Reeves, 10 Wall., 176 ; Lamb vs. Cam. & Amboy R. R. Co., 46 N. Y., 271 ; Cochran vs. Dinsmore, 49 N. Y., 249.

But in the present case, the defendant did not stop with simply alleging that the damage occurred by freezing, which *prima facie* released it from responsibility. It admitted the delay and undertook to justify, on the ground that it was not

a negligent delay. When the admission was made that the potatoes were not delivered in time, and an excuse was set up therefor, then the duty of showing that the excuse was a sufficient one devolved upon the defendant. Having admitted that it was in fault, the burden was upon it of showing that that fault was not negligence.

We think the court declared the law correctly in requiring that, in order to amount to an excuse for the delay, the obstructions to the running of the trains should have been the work of persons other than the employees or servants of the road.

A company will be held responsible for damages resulting from a delay to transport freight in the usual time, when it is caused by its servants suddenly and wrongfully refusing to work. Because the employees refuse to work or perform their usual employment, it will not release the company or the carrier from the responsibility of his contract. It may be his misfortune, but third persons are not to suffer thereby. His liability is all the same whether he could get others to supply their places or not.

If a contractor should enter into an agreement to build a house, and have it completed at a certain stipulated time, and his workmen should leave him, so that he could not finish it at the time, surely this would not release him from liability in not fulfilling his contract.

In the case of Blackstock vs. The N. Y. & E. R. Co., (20 N. Y., 48) the action was brought against the defendant as a common carrier, for a delay in the carriage of a large quantity of potatoes in barrels and sacks from Hornellsville in Steuben county, to the city of New York. They were received by the defendant on different days, and would have been delivered according to the usual course of business, within five days, but they were detained about seventeen days, and, when delivered, were found to have become unmerchantable, and were almost worthless. The delay was occasioned by the refusal of a large number of the defendant's engineers to work. The defendant used diligent efforts to procure other engineers,

to run its trains, but was not successful.   The court held that these matters constituted no defense.   A similar point was ruled in Weed vs. The Panama Railroad Co., (17 N. Y., 362) where the misconduct of the defendant's servants in detaining a train of cars was active, but it was held not to furnish any answer to the action for the detention.

In the case at bar the excuse arises wholly out of the misconduct of the defendant's servants, the engineers, in refusing to perform their duties and attempting to keep others from taking their places.   But this in nowise exonerated the defendant from complying with its contract.   The relations existing between the several parties were wholly different.   Between the plaintiff and engineers there was no privity.   The latter owed no duty to the former which the law can regard or recognize.   They committed against him no positive tort or trespass, which would enable him to pass by the master and bring an action directly against them.   The defendant was liable for their conduct and might proceed against them for damages for their tortious acts, but the plaintiff could not, as they were not committed against him.

We cannot see that the court committed any error in its instructions on this subject.   If the trains were delayed or interrupted by an armed mob, over which defendant had no control, that might afford an excuse, provided reasonable care and diligence were used by the defendant; but for the acts, omissions and wrongs of its servants it was liable over to the plaintiff.

The court did right in modifying defendant's fourth instruction.   As originally drawn, it released the defendant from liability if it carried the potatoes with reasonable speed and dispatch, under all the circumstances of the case.

The contract was an absolute undertaking, and there was no exception made in reference to any circumstances by which the defendant was surrounded.   Besides there was no evidence to justify it; but there was evidence to show that the agent represented to the plaintiff that the road was clear, and that the potatoes would be delivered in St. Louis within

twenty-four hours, and upon this evidence plaintiff's instruction was predicated. But these questions, under proper instructions, were all fairly submitted to the jury.

We have seen no error in the court in regard to its ruling in the admissibility of evidence, and upon a view of the whole record, the judgment should be affirmed. All the other judges concur.