## GEORGE A. SHOCKLEY *vs.* PENNSYLVANIA RAIL-ROAD COMPANY.

*Carriers—Delay in Transportation— Liability of Intermediate Connecting Carrier—Evidence—Appeal.*

In an action against an intermediate carrier to recover damages for its delay in the transportation of freight, a memorandum showing the time of the arrival of the cars carrying the freight at certain points, which memorandum is a copy and not the original record, is not admissible in evidence.

When freight is to be transported over two or more connecting roads, each road is liable only for failure to carry safely and promptly over its own line, when there is no agreement imposing upon a road extra-terminal liability for delay.

Plaintiff shipped fruit to Boston from a place in Maryland. The shipments passed over three connecting roads before being delivered to the defendant company in Philadelphia, by which they were carried thence to Jersey City, and there delivered to another carrier for final transportation. In an action against the defendant, this intermediate connecting carrier, to recover damages for its delay in the transportation of the fruit, which resulted in its being delivered in Boston in a damaged condition and too late for the market on the day for which it was designed, the evidence showed that the fruit was delivered in good condition to the initial carrier at a certain time, but there was no evidence as to the time when the cars in which the fruit was loaded left the starting point, or as to when they were delivered to the next carrier or to the defendant, or as to what was a reasonable time for transportation over the several roads. *Held,* that since the burden of proof was upon the plaintiff to show that the delay complained of occurred on the defendant's road, and there is no evidence to show when defendant received the fruit or when it was delivered to the next carrier, the jury was properly in-

structed that there was no legally sufficient evidence to entitle plaintiff to recover.

The error of the trial Court in excluding competent evidence of a certain fact cannot be complained of on appeal when that fact was subsequently proved in the case by other witnesses, and the appellant does not appear to have been injured by such exclusion of evidence.

*Decided December 2nd, 1908.*

Appeal from the Circuit Court for Somerset County (LLOYD and HOLLAND, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*James E. Ellegood* and *F. Leonard Wailes* (with whom was *Henry B. Freeny* on the brief), for the appellant.

*John R. Pattison,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 27th day of December, 1904, the appellant brought this suit in the Circuit Court for Wicomico County against the appellee, the Pennsylvania Railroad Company, a corporation incorporated under the laws of the State of Pennsylvania, but exercising franchises as a common carrier in the State of Maryland.

On the 23rd day of March, 1908, upon suggestion of the appellee, the case was removed to the Circuit Court for Somerset County for trial, and from a judgment in favor of the defendant for costs the plaintiff has appealed.

It appears from the record there were three exceptions taken by the plaintiff to the rulings of the Court in the course of the trial of the case, and these form the basis of this appeal. Two of these were to the admission of testimony, and the third to the granting of the defendant's

prayer at the conclusion of the plaintiff's case, which instructed the jury that upon the pleading and evidence in the case there was no legally sufficient evidence to entitle the plaintiff to recover.

The questions presented by these exceptions will now be considered by us in their regular order.

The suit was instituted, as stated by the bill of particulars filed by the plaintiff, for the purpose of recovering damages for the loss of strawberries shipped from Pittsville, Wicomico County, Maryland, to Seaverns & Co., Commission Merchants, at Boston, Mass., from May 6, 1903, to June 1, 1903, over and by way of the connecting lines and railroad of the defendant, and not transported and delivered with due dispatch by the defendant.

The strawberries were delivered and received on the days stated by the Baltimore, Chesapeake and Atlantic Railway Company, the initial carrier, at its station, Pittsville, Wicomico County, to be carried to their point of destination, Boston, Mass. They were consigned and way-billed over the following railroads: From Pittsville to Salisbury, a distance of ten miles, by the Baltimore, Chesapeake and Atlantic Railway; from Salisbury to Delmar, a distance of six miles, over the New York, Philadelphia and Norfolk Railroad; from Delmar to Philadelphia, a distance of one hundred and twenty miles, by the Delmar Division of the Philadelphia, Baltimore & Washington Railroad; from Philadelphia to Jersey City, a distance of ninety miles, over the defendant's road, an intermediate carrier, known as the New York Division of the Pennsylvania Railroad, and from the last-named point to Boston, over the New York, New Haven and Hartford Railroad, the terminal carrier.

The declaration in this case alleges that the defendant (an intermediate connecting carrier) did not transport the strawberries over its road with reasonable dispatch as it was in duty bound to do, and by reason of this failure on its part the strawberries reached their point of destination too

late for the market of the day for which they were shipped and were received in a damaged condition, whereby the plaintiff sustained a heavy loss.

The trial resulted in a verdict for the defendant, and the case being here upon the plaintiff's exceptions, we will now proceed to consider them.

The first exception relates to the rulings of the Court in excluding the testimony of the witness Davis as to the customary usage for the transportation and time of arrival of "the Boston train" for the early morning market for berries. It appears, however, that the witnesses Loring and Morrison, subsequently in the course of the trial, upon the offer of the plaintiff, testified as to the time of the arrival of the strawberry trains, so the plaintiff had full benefit of the excluded evidence of the witness Davis, and could not have been injured by this ruling, assuming the Court below committed an error in so ruling.

The second exception was taken to the ruling of the Court in refusing to permit the counsel for the plaintiff to read to the jury, in connection with the depositions of the witness Tomlinson, taken in Jersey City, N. J., on the 27th of February, 1908, under a commission, before a Notary Public of the State of New Jersey, a tabulated statement called "Boston Cars," under the column headed "Passed Gray's Ferry" and under the column arrived "J. City," for the purpose of showing the time that the cars arrived at and passed Gray's Ferry at Philadelphia and their arrival at Jersey City.

It appears, upon the taking of the depositions of the witness Tomlinson, in Jersey City (which were read to the jury without objection), the witness had a memorandum headed "Boston Cars," with the first or left-hand column headed "Car Initial Number," and the right-hand column headed "Time Floated," and the witness here testified that the initials and car numbers noted in the column headed "Car Initial Number," and the figures at the right-hand column un-

der the words "Time Floated" are the car numbers and the times that the said cars were delivered to the floats of the New York, New Haven and Hartford Railroad. Thereupon the following agreement was had by the counsel for the parties as to the use of the memorandum at the trial of the case: "It is stipulated and agreed between the plaintiff and defendant that the plaintiff may offer in evidence at the trial of this cause the first or left-hand column headed 'Car Initial Number,' and the right-hand column headed 'Time Floated,' and that the offer will not be objected to on the ground that the same is not the original or primary evidence and shall have the same effect as if the same were so offered as the primary proof; and that the defendant may offer at the trial of the cause any other data appearing upon the memorandum consisting of two sheets and marked 'Boston Consignments,' and no objection to such offer will be made on the ground that the memorandum is not primary evidence. The plaintiff and defendant reserving objections as to the materiality of the said testimony."

It will be thus seen that the copy of the memorandum offered to be read, called the tabulated statement of "Boston Cars," that is the columns headed "Passed Gray's Ferry" and "Arrived J. City," was not included in the stipulation between the parties, to be used as evidence by the plaintiff at the trial of the case, and not being the original record was properly rejected by the Court. The plaintiff had the benefit of the depositions of the witness, both his examination in chief and on cross-examination, and the defendant was not required to offer its evidence until the close of the plaintiff's case. We find no reversible error in the ruling of the Court embraced in this exception.

The principal question, however, on the appeal arises under the third exception, and that is whether the Court committed an error in granting the defendant's prayer which withdrew the case from the jury.

According to the evidence, the defendant company was

an intermediate connecting carrier, its road beginning at Gray's Ferry, Philadelphia, and ending at Jersey City, New Jersey. Freight shipped from Pittsville to Boston would have to pass over the roads of three other companies, the Baltimore, Chesapeake and Atlantic Railway Company from Pittsville to Salisbury; the New York, Philadelphia and Norfolk from Salisbury to Delmar; and the Philadelphia, Baltimore and Washington to Gray's Ferry, before reaching the defendant's road, and then, before reaching Boston, the point of destination, would have to pass over the New York, New Haven and Hartford Railroad, the delivering carrier.

The grievance complained of by the plaintiff and the substantial cause of the action was the negligence of the defendant company, a connecting carrier, to deliver with reasonable dispatch or on time, the freight mentioned in the declaration, and in consequence of this failure they did not reach the point of destination in time for the market of the day for which they were shipped.

Under the facts of the case now before us, there were five different railroads over which the freight in question had to be carried from Pittsville, Md., the initial point, to Boston, Mass., the point of destination, and the liability of the defendant company, as one of the intermediate connecting carriers was confined to the limits of its own road. In other words, it was in duty bound to safely carry with reasonable dispatch over its own road and to safely and promptly deliver, without unnecessary delay and detention to the next connecting carrier.

The law in this regard has been settled in this State by numerous decisions and by the Supreme Court of the United States. *P., W. B. R. R. Co.* v. *Lehman,* 56 Md. 233; *Hoffman* v. *Cumberland R. R. Co.,* 85 Md. 394; *B. & O. R. R. Co.* v. *Whitehill,* 104 Md. 314; *Orem Fruit Co.* v. *N. C. Ry. Co.,* 106 Md. 16.

In *Myrick* v. *R. R. Co.,* 107 U. S. 107, it was held: "Each road confining itself to its common law liability is only

bound in the absence of a special contract to safely carry over its own route and safely to deliver to the next connecting carrier, but any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect such liability will not attach and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence." And in *Elliott on Railroads,* sec. 1435, it is said: "The majority of our Courts have held, in accordance with what is called the American rule, that the mere acceptance of goods directed to a point off the carrier's line is not a sufficient basis for the implication of a contract for extra terminal liability and that, in the absence of an express contract or of more significant facts or specification than the fact of acceptance as the basis of an implied contract, the initial carrier is discharged by carrying safely to the end of its line and there delivering to the next carrier."

There was no contract in this case for extra terminal liability, or any facts upon which such a contract could be based, so it is clear, the defendant company would be liable only for delays occurring on its own route, which could have been avoided by the exercise of reasonable diligence in delivering the freight to the next connecting carrier.

According to the evidence in the case, the freight was delivered to the initial carrier, the Baltimore, Chesapeake and Atlantic Railway, at its station at Pittsville, in good condition on the day it was to be shipped, and the cars were due to leave Pittsville at about 5.30 P. M., but there is no evidence whatever that the train left on time or the hour of the day at which the cars actually left the starting point. The witness Hickey, agent at Delmar of the New York, Philadelphia and Norfolk Railroad and of the Philadelphia, Baltimore and Washington Railroad, testified as to the time of the arrival of the cars at Delmar, a distance of only sixteen miles from Pittsville, and stated they arrived at different hours, from 8.30 P. M. to 12.52 P. M.

There is also an absence of evidence as to the time when the cars left Pittsvile, Delmar, Salisbury and Gray's Ferry, or what would be a reasonable time to be consumed in the transportation of the freight over the several roads. There is no evidence whatever as to the time when the freight was received upon the defendant's road or when it was delivered to the next carrier, and it is therefore difficult to see upon what ground it can be asserted that the delay in the transportation of the freight was solely due to the defendant's negligence. The burden of proof was upon the plaintiff to show that the delay occurred upon the defendant's road and, failing in this, the Court below committed no error in granting the defendant's prayer, which instructed the jury that upon the pleading and evidence there was no legally sufficient evidence to entitle the plaintiff to recover. In this case, there was no evidence showing when or where the delay was in fact caused, and there being no presumption that it happened upon the line of the defendant company, an intermediate carrier, there could be no recovery against the defendant. There being no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*