## PENNSYLVANIA RAILROAD COMPANY *vs.* WILLIAM FOSTER CLARK.

*Common carriers: not absolute insurers; reasonable care: liability in absence of special contract. Shipment of goods; delay in delivery; question for jury. Prayers: on theory, of which there is no evidence.*

Where there is no special contract between a common carrier and a shipper over its lines, the carrier is responsible under the common law liability alone.                    pp. 517-518

In the absence of special contract, a common carrier is not an absolute insurer of goods shipped over its lines, but is responsible only for the duty of exercising ordinary and reasonable care and diligence under all the circumstances of the case.
                                              p. 518

Where freight has been injured by delay in the delivery, it raises a *prima facie* presumption of negligence on the part of the carrier; whether the evidence offered by the carrier in defense is a sufficient excuse, or not, is a question for the determination of the jury.                    p. 518

A prayer is erroneous which submits to the jury to find that it was negligence for a carrier to accept perishable freight, with the knowledge that it could not deliver the same in marketable condition, when there was no evidence in the case of any such knowledge.                    p. 519

Prayers based upon a theory of which there is no evidence in the case are erroneous.                    p. 519

*Decided November 13th, 1912.*

Appeal from the Circuit Court for Kent County (HOPPER and ADKINS, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison and Stockbridge, JJ.

*William W. Beck,* for the appellant.

*L. Wethered Barroll,* for the appellee.

Stockbridge, J., delivered the opinion of the Court.

The questions presented by this appeal are all raised by one bill of exceptions, reserved to the rulings of the trial Court upon the prayers. They involve the duty and liability of a common carrier, for injury to perishable freight, resulting from alleged delay in its transportation. Inasmuch as the first prayer of the defendant sought to withdraw the case from the consideration of the jury upon the ground of a failure of evidence to support a verdict for the plaintiff under the pleadings, a succinct statement of the case presented by the proof will tend to clarify the questions of law involved.

On the 16th of August, 1910, the plaintiff, who was a buyer and shipper of fruit, delivered to the Philadelphia, Baltimore and Washington Railroad Company, at Henderson, Maryland, some peaches, pears, canteloupes and apples for transportation over the line of that road and a connecting line, the Pennsylvania Railroad, to Jersey City. On the day following, the plaintiff made a like shipment of peaches, apples and plums. According to the evidence these shipments should have reached their destination soon after midnight on the days on which they were made. The evidence tends to show that prompt delivery was made in each case by the initial to the connecting carrier, but that the consignments did not reach their destination until sometime on the 18th of August, or from six to thirty hours late, and that when they did arrive decay had to some extent set in, so as to greatly impair their market value. It is to recover for this lessened value that the present suit was brought.

The defendant company does not attempt in any manner to controvert these facts, but seeks to excuse the delay and avoid any liability by showing that on the 16th of August, the date of the first shipment, there was an exceptionally serious wreck on its line, in which some fifteen or more large, steel, coal cars of the Berwin & White Coal Mining Co. were demolished, the railroad tracks torn up for some distance, approximately eight hundred tons of coal dumped on the tracks, or where the tracks had been, and that all traffic at that point was stopped for a longer or shorter time until the wreckage could be cleared away, and a portion of the tracks relaid. The railroad company further gave evidence to show that it had used all possible expedition in clearing its tracks for traffic, and forwarding the accumulation of freight. Evidence was also given for the purpose of showing that the wreck was caused by the breaking of an arch bar on one of the cars of the Berwin & White Coal Mining Co., and that this breakage was due to a latent defect in the metal composing the arch bar, which was not and could not have been detected by any of the customary examinations or inspections made of the cars by those employed for that purpose.

The declaration filed by the plaintiff in instituting the action did not undertake to specify any particular act on the part of the defendant company as a reason for liability, but simply averred that the defendant neglected its duty, and did not safely carry the said fruit, nor deliver the same to the consignees as it had agreed to do, "but by default of the defendant in the premises the value of the said goods was lost to the plaintiff."

The defendant pleaded *non cul.* and the case then proceeded to trial before a jury. At the conclusion of the testimony the plaintiff offered three prayers, of which the third related to the measure of damages, and the defendant presented five, the first of which has already been referred to. The trial Court granted all of the plaintiff's prayers and refused all of those offered by the defendant.

The first and second prayers of the plaintiff were as follows:

### Plaintiff's First Prayer.

The plaintiff prays the Court to instruct the jury that if it shall find from the evidence that the plaintiff shipped in good condition certain perishable fruit at Henderson, Md., on the line of the Philadelphia, Baltimore and Washington Railroad Company, a common carrier on August 16th and 17th, 1910, consigned to Jersey City, and that the Philadelphia, Baltimore and Washington Railroad Company delivered said fruit to the defendant as the delivering common carrier in order that the defendant might deliver said fruit at defendant's terminal in Jersey City, the place of its destination, then if the jury find that either or both shipments of said fruit when delivered by the defendant at its destination was in a rotten and decayed condition, then the jury is instructed that the defendant is responsible for the inferior condition of the fruit so injured at the time of its delivery if the jury find that such condition was caused by delay in transportation by the defendant.

### Plaintiff's Second Prayer.

The plaintiff prays the Court to instruct the jury that if it shall find the plaintiff delivered the fruit in the manner mentioned in the plaintiff's first prayer, and if the jury shall further find that it was necessary for the receiving common carrier to forward said fruit over the line of the defendant in order that it might reach its destination; and if the jury shall find that the defendant, because of a serious wreck on its road, knew that it would be impossible for it to deliver said fruit in good marketable condition at its destination, yet defendant received said fruit to carry it forward on its road to its place of destination, it assumed the risk which might follow if said fruit deteriorated and rotted while in its care and custody as such common carrier by reason of delay in transportation by the defendant.

The first question to be disposed of is the nature of the carrier's duty, and the extent of its responsibility. No special contract is proven as to the time when the deliveries of the shipments of fruit in question were to have been

made, and the liability was therefore the common law liability of the carrier.

There are those cases in this State in which the questions now raised were fully and carefully considered, and it will be sufficient to refer to them without again repeating the analysis of the various adjudicated cases cited in them.

These are *P., W. & B. R. R. Co.* v. *Lehman,* 56 Md. 209; *Shockley* v. *Penna. R. R. Co.,* 109 Md. 123; and *P., B. & W. R. R. Co.* v. *Diffendal,* 109 Md. 495. A careful examination of these adjudications and many others leads to the following conclusion, Whereas formerly and to some extent even yet a carrier was treated as an insurer of the property of a shipper, at the present day this rule has been relaxed when a delivery is made, especially as affecting perishable freight, and there is imposed on the carrier, in the absence of special contract as to time of delivery, only the duty of exercising ordinary or reasonable care and diligence under all the circumstances of the case to protect the freight from injury.

See also, *Brennisen* v. *Penna. R. R. Co.,* 100 Minn. 105; *Wilbert* v. *N. Y. & Erie R. R. Co.,* 12 N. Y. 251; *Hutchinson on Carriers,* sec. 496; 6 *Cyc.* 442; *Blackstock* v. *N. Y. and E. R. R. Co.,* 20 N. Y. 48; *Geismer* v. *L. S. and M. Co.,* 102 N. Y. 563.

The defendant's first prayer was properly refused because it asked the Court to rule as matter of law that the evidence was insufficient to afford a basis for recovery by the plaintiff. The delay in the transportation was not denied. This raised a *prima facie* presumption of negligence, and whether the excuse set up by the defendant was sufficient to show that it had fulfilled its duty of exercising reasonable diligence in the forwarding of the fruit was a question of fact properly to be passed on by the jury. While this case presents many points of similarity to that of the *St. Louis So. W. R. Co.* v. *Wallace,* 22 L. R. A. N. S. 379, in which an instruction similar to that asked for in this case was given, it differs from it in one very essential particular, namely, that

there a special contract as to time of delivery had been made, thus changing the entire legal aspect of the instruction asked for.

The first prayer of the plaintiff which was granted by the trial Court in effect made the carrier an insurer of the property and its delivery, under all conditions, not even excepting a failure to deliver by reason of an act of God or the public enemy. This operated, therefore, to hold the railroad company to a different and higher degree of responsibility than the law exacts, and the prayer should have been refused. When delay in delivery of freight has been shown, and the defendant has presented evidence tending to excuse that delay it then becomes a question for the jury whether the facts as given in evidence on behalf of the defendant shows such reasonable diligence as should excuse the delay.

The second prayer of the plaintiff proceeds upon this theory, and assigned as the default of the defendant upon which to base his recovery, the acceptance by the second or connecting carrier of the freight, with knowledge of the impossibility of its delivery at the point of destination, in good marketable condition. Yet from beginning to end of the testimony there is nothing to show such knowledge, or any facts upon which such knowledge could have been imputed to the company. What the evidence does show is that one track was cleared for traffic seventeen minutes after the wreck occurred, the second fourteen hours, the third sixteen hours, and the fourth fifty hours following the wreck. As the tracks were successively cleared they were utilized for the resumption of traffic in the following order, passenger trains, trains carrying perishable freight and live stock, other freight.

Under such evidence the question might very properly have been submitted to the jury to say whether the defendant company had used due and reasonable diligence in the dispatching and forwarding of the plaintiff's fruit, but that is an entirely different matter from submitting to the jury to find upon such evidence that the defendant had knowledge

that it would be impossible to ⸍ deliver the freight at its destination in good marketable condition. This prayer should therefore also have been refused.

No error is perceived in the rejection by the Court of the other prayers of the defendant in the form in which they were presented, but for the errors already indicated the judgment of the Circuit Court for Kent County in this case must be reversed.

> *Judgment reversed and cause remanded for a new trial, costs to be paid by the appellee.*