PENNSYLVANIA RAILROAD COMPANY vs.
H. B. WALKER ET AL.

*Carriers—Perishable Freight—Delay—Failure to Ice—Prayers and Instructions.*

The delivering carrier is liable for such delays only as occur on its own line.          p. 326

Plaintiff in a suit against a carrier must prove delay, before the carrier is under the burden of justifying its time, or of proving that the delay did not cause the damage to the shipment.          p. 326

In an action against a carrier for damage to a shipment of cabbage, the refusal of an instruction that there was no legally sufficient evidence under the pleadings that the damage was due to any delay in transportation was erroneous, there being no evidence that faster time could have been made on the jour-

ney or at any stage thereof, and evidence that the car was one day in the yard at a junction point not itself showing that there was undue delay at that point in getting trains broken up, and cars of perishable freight iced, made up, and moved on again.

pp. 326, 327

The delivering carrier is liable only for damage to a shipment caused on its own line.                                    p. 328

Where freight is of such a nature that it might deteriorate from a cause not within the carrier's control, the carrier is not an insurer of arrival in good condition, but is liable only for failure to use reasonable care.                              p. 328

If freight was shipped in good condition, loaded and ready to stand the trip if kept iced with due care, damage found on arrival at destination is chargeable to the delivering carrier, which has access to all the facts, unless and until it can show that it did exercise due care.                               p. 328

In an action for damage to a carload of cabbage, in view of evidence that there was no ice in the car's bunkers on its arrival at destination, it was proper to refuse a prayer that if the jury found that the only icing station, between the junction point at which defendant received the car and its destination, was at a point named, and that the defendant at that point iced the car to its full capacity and properly closed it, and delivered it the next morning at its destination, defendant was not liable, was properly refused as assuming that icing at that station alone was sufficient.                            pp. 328, 329

Where a carrier undertakes to haul refrigerated freight, it is required to provide the icing ordinarily needed for such shipments.                                                      p. 329

In an action for damage to a carload of cabbage, a prayer that if defendant carrier iced the car to its full capacity at a certain point, the only icing station on the route, and properly closed the car, and delivered it the next morning at its destination, defendant was not liable, even though the car was discovered on its arrival to be without ice, was improper, as instructing the jury as to the verdict upon finding the truth of two irreconcilable facts, the sufficient icing of the car and its arrival without ice, and as therefore confusing.     pp. 329, 330

*Decided February 4th, 1925.*

Appeal from the Superior Court of Baltimore City
(STEIN, J.).

Action by H. B. Walker and others, co-partners trading
as H. B. Walker & Sons, against the Pennsylvania Railroad
Company. From a judgment for plaintiffs, defendant ap-
peals. Reversed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Ralph Robinson,* for the appellant.

*J. Purdon Wright,* with whom was *Wendell D. Allen*
on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The plaintiffs below, now appellees, were the purchasers
of a car load of bulk cabbage, f. o. b. Skaneateles, New York,
to be shipped over the Skaneateles Railroad as initial carrier,
and over the Pennsylvania Railroad as delivering carrier,
to Baltimore. The cabbage arrived in Baltimore spoiled,
and there was some testimony that no ice was found in the car
on arrival, and the delivering carrier is sued for the damage.

The car was loaded on the tracks of the initial carrier on
September 19th, 1921, without ice. On the bill of lading
was written: "Ice at first icing station, and keep iced to
destination; no ice in bunkers when loaded; vents closed."
The shipper produced testimony that the cabbage itself was
fresh and in good condition when loaded. The testimony
produced by the defendant carrier, with its records of the
car, was that the car was turned over to it at Newbury
Junction, New York, on September 22nd, and was iced there
for the first time. On the morning of the 23rd, at 6 A. M.
it reached the yards at Enola, near Harrisburg, Pennsyl-
vania, where freight trains from the several directions are
broken up, and the cars redistributed and made up for fur-
ther conveyance to New York, Philadelphia and Baltimore.

At Enola there is another icing station, an emergency station, which is the only one along the route of this shipment between Newbury Junction and Baltimore. This particular car was found to need more ice, there being only 5,000 pounds left in it, and its capacity being over 11,000 pounds; and it was ordered to be iced and was put in place for icing at 2 P. M. It was then loaded with ice to capacity and left Enola at 7.30 P. M. for Baltimore. The next morning it arrived at Baltimore and was inspected about 8 o'clock. The car was found still sealed with the seals of the Skaneateles Railroad, the initial carrier, and the railroad inspector reported its bunkers still about three-fourths full of ice, and all properly closed up. The carrier also introduced in evidence a letter from an adjustment agency, which had inspected the car for the consignee and had filed a protest and given notice of claim, now notifying the carrier to cancel the protest and notice, as their "investigation showed that there was no carrier liability connected with the move of this car." But the inspector of the agency testified at the trial that he found the car without ice on arrival, as already stated, with plugs out, traps open and under ventilation; and he produce his records, made at the time, as the basis of his testimony.

Two rulings only have been argued on appeal. The first was the rejection of a prayer of the defendant that the jury be instructed that there was no legally sufficient evidence under the pleadings that the damaged condition was due to any delay in the transportation. This prayer was rejected along with all other prayers offered, the case having been given to the jury without instructions.

We do not find any evidence of negligent delay, apart from all question as to icing. The defendant in this situation could be held liable only for delays on its own line, and it is incumbent upon the plaintiff to prove delay, before the carrier is placed under the burden of justifying its time, or of proving that the delay did not cause the damage. *Hoffman v. Cumberland R. R. Co.,* 85 Md. 392, 394; *Shockley v. Penn. R. R. Co.,* 109 Md. 123, 128; *N. Y. & Baltimore Trans. Co. v. Baer,* 118 Md. 73, 78; *Penn. R. R. v. Clark,*

118 Md. 514, 518. The details of the time of transportation in this case were given, but delay is relative, and the record contains no evidence that faster time could be made on the journey or at any stage of it. It is argued that the car was held in the yards at Enola unnecessarily long. One whole day might well strike a jury as too long for the icing, reclassification and forwarding from that place, but the jury would have no basis for comparison, and no actual information on the subject. For all that appears in the record, a day might, upon full information, be found to be the minimum of time for getting trains broken up, and cars of perishable freight iced, made up, and moved on again. For lack of any basis for estimating reasonable dispatch, the prayer would seem proper and, in view of the likelihood that a jury, without realizing the amount of work and time necessary for getting the car iced and put on its way again at Enola, might speculate and render a verdict upon the length of time the car was there, the prayer may have been materially necessary to the presentation of the defendant's case for decision. In this connection it must be observed that the plaintiff offered evidence of the time ordinarily consumed in the run from Skaneateles to Baltimore, for comparison with the time consumed in this instance, but the evidence was excluded on objection. The ruling has not been argued. We cannot, of course, assume that the evidence would have shown the time of this shipment to have been unusual, and if it had done so, then in order to determine whether there had been negligent delay for which this defendant might be held liable, there would remain to be considered the evidence adduced to show that most of the time here was taken up on the road of the initial carrier, for whose negligence this defendant would not be liable. Our conclusion is that there was reversible error in the rejection of the defendant's third prayer, and that it can only be corrected by a retrial.

The other ruling argued is that upon a prayer of the defendant, the fifth, for an instruction to the jury that if they found from the evidence that the only icing station along the route between Newbury Junction and Baltimore was at

Enola, and that the defendant iced the car to its full capacity there, and properly closed it, and delivered it next morning at Baltimore at the time specified, then the delivering carrier could not be held liable for damage to the cabbage even though the jury should also find that upon the consignee's examination the car was discovered to be without ice.

We see only one defect in the prayer. It fails to include among the elements which would together establish the fact of due care on its part, that the provision for icing at Enola would ordinarily be sufficient to take care of iced freight which is received in good condition for carriage from Newbury Junction to Baltimore. The case is unusual because the proof by the plaintiffs themselves showed at the outset the loading of the car without ice, and travel in that condition before the defendant carrier received it. This carrier is, of course, liable only for damage caused on its own line. *N. Y. & Baltimore Transportation Co. v. Baer,* 118 Md. 73, 79. And as the freight was of such a nature that it might deteriorate from a cause not within the control of the carrier, the carrier was not an insurer of arrival in good condition; but was liable only for failure to use reasonable care. *Penn. R. R. Co. v. Clark,* 118 Md. 514, 518; *Higgins v. C. B. & Q. Co.,* 135 Minn. 402, L. R. A. 1917 C. 507. If freight is shipped in good condition, loaded and ready to stand the trip if kept iced with due care, damage found on arrival at destination is chargeable to the delivering carrier, which has access to all the facts, unless and until it can show that it did exercise due care. *N. Y. & Baltimore Trans. Co. v. Baer, supra,* page 59; *P., B. & W. R. Co. v. Diffendal,* 109 Md. 494, 505. But if, in this case, there had been no testimony of arrival at destination without ice, that is, if the case of the plaintiff had depended merely upon the fact of deterioration of the cabbage, it might be questioned whether the carrier would be placed under this burden of disproof, when the very bill of lading with which the plaintiffs opened their case shows the starting without ice on the initial carrier's road, which would seem to be at least a possible cause of damage beyond the defendant carrier's control and for which it would

not be liable. It will be noted that in the case of *P., B. &
W. R. Co. v. Diffendal, supra,* page 504, the facts which were
held to be sufficient to show original shipment in good condi-
tion and, therefore, to place the burden of proof on the de-
livering carrier, were "that the peaches were placed in the
car Cave Town in good condition, that the car was a good
refrigerator car, and that the ice bunkers were filled with
ice * * * when the loading of the peaches was completed."
And see *Beard v. Illinois Central R. Co.,* 79 Iowa, 518;
*Texas etc. R. Co. v. Kelly,* (Tex. Civ. App.), 74 S. W. Rep.
343. But if the jury accepted as true the testimony that no
ice was found in the bunkers of this car on arrival at Balti-
more, then they had before them a possible contributing cause
of damage at this end, and the delivering carrier would, we
think, be under the necessity of rebutting liability for the
damage by proof that, despite the lack of ice at Baltimore, it
provided all the icing that such a shipment would ordinarily
require, or that the damage would have resulted in this in-
stance notwithstanding a failure to do so. The carrier's fifth
prayer asks that icing at the only icing station maintained
on the route of this shipment be held due care. It is true, as
contended in support of the prayer, that the defendant could
not be required to give this one car extraordinary treatment;
with icing at places along the road where icing is not ordi-
narily needed. But as it undertook to haul refrigerated
freight over this trip, it was required to provide the icing
that is ordinarily needed for such shipments. And its
fulfillment of this duty was an essential to due care,
which the fifth prayer assumes instead of leaving the jury to
find. As an assumption it may have strong foundation, but
it can hardly be said that the court should have taken it as the
basis of its instruction to the jury. We cannot say, therefore,
that the rejection of the prayer was erroneous. It may be
added that if it was beyond question that the icing shown by
the carrier's records and described in the prayer was sufficient
to keep the car iced to destination, then the fact that there
was no ice on arrival at destination (if the jury so found),

would be irreconcilable, and the prayer might well have been rejected as confusing in instructing the jury as to the verdict upon finding both facts true. We conclude we should not disturb the ruling on this prayer.

> *Judgment reversed and new trial awarded, with costs to the appellant.*